Sammie L. **NELSON**, Petitioner-Appellant,

v.

Robert J. **MOORE**, Superintendent, Massachusetts Correctional Institution, Walpole, Respondent-Appellee.

Doreen **MOORE**, Petitioner-Appellant,

v.

Betty Cole **SMITH**, Respondent-Appellee.

Nos. 72–1160, 72–1161.

United States Court of Appeals, First Circuit.

Argued Sept. 7, 1972.

Decided Dec. 14, 1972.

Charles P. Dattola, Boston, Mass., with whom Henry F. Owens, III, and Owens & Dilday, Boston, Mass., were

on brief, for Sammie L. Nelson, appellant.

Daniel H. Kelleher, Boston, Mass., for Doreen Moore, appellant.

David A. Mills, Asst. Atty. Gen., Chief, Appellate Section, with whom Robert H. Quinn, Atty. Gen., and John J. Irwin, Jr., Asst. Atty. Gen., Chief Crim. Div., were on brief, for appellees.

Before COFFIN, Chief Judge, McENTEE and HAMLEY,* Senior Circuit Judges.

HAMLEY, Senior Circuit Judge.

Sammie L. Nelson and Doreen Moore appeal from the denial of their applications for writs of habeas corpus.

Nelson and Moore were jointly tried and convicted in a Massachusetts court on charges of committing an assault and battery with a dangerous weapon upon a fourteen-year-old girl, and of contributing to the delinquency of that minor. At the same time, Nelson was convicted of statutory rape involving this girl. The convictions were affirmed. Commonwealth v. Moore, 269 N.E.2d 636 (Mass.1971).

Nelson and Moore then individually applied to the federal district court for writs of habeas corpus. While they advanced several grounds for relief, the only grounds which concern us here are their contentions that a knife, hose and vacuum cleaner pipe, introduced in evidence at the state trial, were seized in violation of petitioners' Fourth and Fourteenth Amendment rights.

The district court referred the habeas applications to a Magistrate for evidentiary hearings and reports. The Magistrate consolidated the two proceedings, conducted an evidentiary hearing, and issued a report. The Magistrate recommended that petitioners' search and seizure contentions be rejected without prejudice on the ground that petitioners had failed to exhaust available state remedies.

The district court, after hearing objections to the Magistrate's report, adopted the recommendations of the Magistrate. Accordingly, with reference to petitioners' search and seizure points, the applications were dismissed without prejudice for failure to exhaust available state remedies.[1] This appeal followed.

The girl who was the victim of the offenses in question was a runaway who came to Boston, met Nelson and Moore and, at their invitation, moved into their apartment. Nelson provided the girl with a key to the apartment and bought her some clothes. Nelson and Moore later encouraged the girl to engage in prostitution, but in her first adventure of this kind she was arrested for soliciting a plainclothes police officer.

This made Nelson angry. He told the girl she was getting everyone into trouble and that she ought to leave. He then beat the girl with his hands, a shoe, a length of rubber hose, and a vacuum cleaner pipe. He also burned her neck with a knife heated by Moore and used it to cut a pattern on her face. That night Moore took the girl to the YWCA, where the girl spent the night. The next night the girl went back to the apartment, but Nelson beat her again and she returned to the YWCA for the night.

The girl spent the next night at the apartment. During the following evening she went out, ostensibly "to get some clothes from the laundry," but instead went to the police station and turned herself in as a runaway. Some police officers noticed the scars and marks on her face and, questioning her, learned of the beatings she had received from Nelson. The officers then asked the girl to accompany them to the apartment so

---

* Of the Ninth Circuit, sitting by designation.

1. All of petitioners' other habeas grounds were rejected on the merits and this court granted a certificate of probable cause limited to: 1. The validity of the search and seizure, the materiality and prejudice; 2. Whether the Massachusetts Supreme Judicial Court has had "a fair opportunity" to consider the asserted constitutional defect.

that they could arrest Nelson for the assault and battery by means of a dangerous weapon.

The disputed search and seizure then occurred. The evidence pertaining to this issue, as presented at the trial, is summarized as follows in the opinion of the Supreme Judicial Court of Massachusetts:

"1. *The seizure.* There was testimony that the victim admitted the police officers to the apartment with a key given her by the male defendant, and other testimony that the male defendant opened the door before she could. One of the officers testified that they then told the male defendant he was under arrest for assault and battery by means of a dangerous weapon and informed him of his rights. The victim then picked up the knife from a counter about seven or eight feet from the male defendant and handed it to the officer. She went into the bathroom, brought out the hose, and handed it to the officer. About ten minutes later, as the patrol wagon arrived, the male defendant called to someone upstairs to give them the pipe, the officers went upstairs, and an unidentified male gave the pipe to them." 269 N.E.2d, at 638.

In the Supreme Judicial Court of Massachusetts, Nelson and Moore assigned as error the trial judge's refusal to hold a voir dire concerning the entry and search of the apartment and the seizure of the articles. Rejecting that assignment, the high Massachusetts court noted that the effort to exclude the evidence as illegally seized was made for the first time when the evidence was offered at the trial. The court held that this was not timely under Massachusetts Superior Court Rule 101B.[2] The court also noted that Nelson was fully aware that these items had been received by the police. In these circumstances, ruled the court, there was no error in the trial judge's refusal to hold a voir dire during the trial.

In their respective habeas applications, Nelson and Moore complain that they had been denied a fair state trial because of the state trial court's refusal to grant voir dire on the search and seizure question. In explanation as to why he had not made a pretrial motion to suppress, as provided in Rule 101B, Nelson stated that he mistakenly thought he was to be represented at the trial by the retained counsel who appeared for him at the probable cause hearing. For this reason, Nelson said, he refused to discuss the case with the appointed counsel who actually represented him at the trial until two days before the trial.[3]

The Magistrate expressed the view that since the state courts had never been given this explanation of Nelson's failure to make a pretrial suppression motion, petitioners had not exhausted their remedies as to the ground for relief based on the denial of a voir dire hearing on the admissibility of the evidence. The district court adopted this recommendation.

It may well be that if a Massachusetts state court heard Nelson's explanation it would accept it as a sufficient reason for such failure. But it must be remembered that the Supreme Judicial Court of Massachusetts referred to such failure only as a reason for rejecting Nelson's and Moore's assignments of error based on the trial court's refusal to grant a voir dire during the course of the trial.

The purpose of such a voir dire is to enable defendants to conduct an evidentiary inquiry into the legality of the seizures. An important by-product of such a procedure is that, by conducting the voir dire in the absence of the jury,

2. Section 101B reads:
"Such motions shall be filed within ten days after a plea of not guilty, or within such further time in advance of trial as the Court may order, unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion but the Court in its discretion may entertain such motions at any time or at the trial."

3. Petitioner Moore offers no such explanation.

possible prejudice resulting from jury knowledge of seized articles later determined to be inadmissible, is avoided.

In the case before us the latter benefit of such a voir dire was not possible because defendants did not seek a voir dire until after the seized articles had been produced in the presence of the jury, discussed by the victim from the witness stand, and received in evidence as exhibits, over objection. It was not until two days later, while a police officer was on the witness stand, and after the trial judge had overruled petitioners' objection to the question whether the witness recognized exhibit No. 2 (the knife), that counsel made their first request for a voir dire.

■ Voir dire at this stage of the trial could not have avoided premature exposure to the jury of the seized articles, and testimony concerning them. Nor was such exposure in any event prejudicial since, as we hereinafter determine in this opinion on the basis of full consideration of all the evidence petitioners had to submit, all but one of the articles were validly seized and clearly admissible.

Assuming that the voir dire, had it been granted, would have produced all of the evidence petitioners brought out at the hearing before the Magistrate, our determinations set out below demonstrate that the trial court would have been correct in holding all but one of the items admissible. Thus, as it turns out, petitioners have not been prejudiced by the failure to grant voir dire during the course of the trial, even assuming that their request therefor was timely.

4. In holding that the search and seizure was lawful, the Supreme Judicial Court of Massachusetts held: the evidence was not of great significance; the police officers were lawfully admitted to the apartment and had probable cause to arrest Nelson without a warrant; the officers gave adequate *Miranda* (Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)) warnings; the seizure of the knife was proper even under the stringent standards established in

It may be that the Magistrate was influenced in his appraisal of the importance of the lack of voir dire by his observation that, because of noncompliance with Rule 101B, the Supreme Judicial Court of Massachusetts declined to consider the search and seizure question on the merits. But a reading of the opinion of the court demonstrates that the court did consider the search and seizure question on the merits and gave explicit reasons why, in its opinion, the search and seizure were valid. 269 N.E.2d, at 638–639.[4] It need only be added that, in the light of the innocuous character of the additional evidence pertaining to the search and seizure, developed at the Magistrate's hearing, as discussed below, it seems highly improbable that a voir dire exploration of the matter at the trial would have led to exclusion of all but one of the items.

■ We accordingly conclude that nothing which has come to light in this habeas proceeding, with regard to petitioners' complaint that they were not afforded a search and seizure voir dire at the state trial warranted the conclusion that petitioners had not exhausted their state remedies, or warranted the affixing of a "without prejudice" condition to the denial of the habeas application.

Turning to the search and seizure question, there are five incidents to be considered, namely: (1) the officers' entry into the general corridor of the apartment house, (2) the officers' entry into the Nelson-Moore apartment, (3) the seizure of the knife, (4) the seizure of the vacuum cleaner pipe, and (5) the seizure of the hose. We will consider these incidents seriatim.

Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); the girl victim's prior occupancy of the apartment justified her entry into the bathroom where she found the hose; Nelson himself directed a third person in another apartment to deliver the pipe to the police; and the hose and pipe were received in evidence only against Nelson; and Moore made no objection to the reception of these items.

■ Concerning the officers' entry into the general corridor of the apartment building, no new facts were developed at the habeas hearing. Thus petitioners have exhausted available state remedies with respect to the legality of the officers' entry into the general corridor of the apartment building. The girl victim admitted the police officers to the building with a key which Nelson had given her. At that time she was still a resident in the Nelson apartment and was entitled to admit the officers into the general corridor.

With regard to the officers' entry into the Nelson-Moore apartment, some new evidence was produced at the habeas hearing. At the state trial the girl victim testified that she had a key. One of the police officers testified that the door opened and Nelson was standing behind it. There was no testimony specifically stating that Nelson opened the door.

Before the Magistrate, however, Nelson testified that he did not open the door, but that it was already open when he entered the living room from the bedroom. The officers who entered the apartment both testified that Nelson opened the door. The girl testified that she attempted to open the door, but that a safety latch or chain prevented her from opening it more than a few inches. She stated that Nelson removed the latch and opened the door.

Neither the Magistrate nor the district court attempted to resolve these conflicting versions of how the entry into the apartment was made. Instead, the Magistrate recommended and the district court ruled that, in view of the new evidence, this factual determination should first be presented to the state court.

■ Under 28 U.S.C. § 2254(b), an application for a writ of habeas corpus may not be granted unless it appears that the applicant has exhausted the remedies theretofore available in the courts of the state. Failure to exhaust a state remedy may result where a legal issue, urged in the federal habeas proceeding, was not theretofore advanced in the state courts,

or where, though the legal issue was presented, the relevant factual allegations presented in the federal habeas proceeding were not before the state courts. Picard v. Connor, 404 U.S. 270, 275–276, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). *See also*, Needel v. Scafati, 412 F.2d 761, 766 (1st Cir. 1969), cert. denied, 396 U.S. 861, 90 S.Ct. 133, 24 L.Ed.2d 113 (1969). But, as we said in *Needel*, at 766, the new factual allegations or evidence must be more than "bits of evidence," and must be of a kind which presents the petitioners' case in "a significantly different posture" from that considered at the state court trial.

In our view, the new evidence pertaining to the manner in which the officers gained entry to the Nelson-Moore apartment does not present the search and seizure claim in a significantly new posture. The officers came to the apartment not to conduct a search and seizure, but to arrest Nelson. They had probable cause to make the arrest for a felony without a warrant if they had reasonable cause to believe a felony had been committed and that Nelson had committed it. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327.(1959).

■■ These officers had such reasonable cause because they received information to that effect from the asserted victim. An asserted victim of a crime is a reliable informant even though his or her reliability has not theretofore been proven or tested. *See* Pendergrast v. United States, 135 U.S.App.D.C. 20, 416 F.2d 776, 785 (1969), cert. denied 395 U.S. 926, 89 S.Ct. 1782, 23 L.Ed.2d 243 (1969); Pendleton v. Nelson, 404 F.2d 1074, 1075–1076 (9th Cir. 1968). Moreover, these officers had substantial corroboration of the informant's information, consisting of the scars and marks on her face, her possession of a key which opened the outside door of the apartment building and the Nelson-Moore apartment, and her willingness to confront Nelson at the apartment door.

Assuming the facts to be as claimed by Nelson, namely, that the girl victim

opened the door by use of her own key, this was lawful because she was then a resident of the apartment possessing a key supplied by Nelson. United States v. Wilson, 447 F.2d 1, 5 (9th Cir. 1971), cert. denied, Polk v. United States, 404 U.S. 1053, 92 S.Ct. 723, 30 L.Ed.2d 742 (1972). *Cf.*, Gurleski v. United States, 405 F.2d 253, 261–262 (5th Cir. 1968), cert. denied, Smith v. United States, 395 U.S. 977, 89 S.Ct. 2127, 23 L.Ed.2d 765 (1969). When the door was opened Nelson stood before the officers. They entered peacefully through an open door and made the arrest.

We therefore conclude that no new significant facts bearing upon the legality of the way in which the officers gained entry to the apartment were developed at the habeas hearing and that petitioners exhausted their state remedies concerning the lawfulness of that entry. We also conclude that on any version of the evidence produced at the state trial and the habeas hearing, that entry was lawful.

With regard to the seizure of the knife, the testimony given by the officers at the trial led the Supreme Judicial Court of Massachusetts to find that the knife was seen by the victim on a counter in the room where Nelson was arrested, and that she gave the knife to the officers. At the Magistrate's hearing the victim testified that she did not remember anything about the knife. Both officers testified that the victim found the knife on a counter located a few feet from Nelson, and then gave the knife to them.

■ The only new evidence introduced at the habeas hearing concerning the seizure of the knife was the testimony of the victim that one of the officers had asked her if she could find the things Nelson used in beating her. She did not know whether this request came before or after the knife was discovered. But this fact has no significance in determining the legality of the seizure of the knife. The fact that the knife was in plain view in close proximity to where

Nelson was standing at the time of his arrest entitled the officers to seize it; no search warrant was required. *See* Chimel v. California, 395 U.S. 752, 768, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

It follows that petitioners have exhausted their state remedies with regard to seizure of the knife and that the knife was lawfully seized.

■ This brings us to the seizure of the vacuum cleaner pipe from the occupant of another apartment in the building. Nelson testified before the Magistrate that he yelled to the occupant to watch Nelson's apartment. This directly conflicts with the testimony of Officer Boylan, at the state trial, that Nelson directed the occupant to give the policeman the pipe.

However, Nelson's testimony before the Magistrate does not present a new fact significant to the determination of the legality of the seizure of the pipe. That determination is to be made on the basis of Nelson's reasonable expectation of privacy. *See* United States v. White, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971); Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Since Nelson had loaned the pipe to his neighbor, he could not reasonably have expected that it would remain private. Whether Nelson actually directed his neighbor to give the pipe to the police has no bearing on this determination. Thus, with respect to this issue, petitioners exhausted any available state remedies, and the seizure of the pipe was lawful.

■ There remains to be discussed the seizure of the hose. According to the officers' testimony at the state trial, the hose was found by the victim when she was looking for her clothes in the bathroom. At the Magistrate's hearing the victim testified that one of the officers asked her if she could find the things Nelson used in beating her. This testimony interjects a significant new fact which, had it been presented to the state court, might have led that court to hold that the seizure of the hose was illegal.

If we were to accept the implications of the new testimony (the district court made no finding of fact as to this), it would be necessary to rule that, under the principles announced in Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), the seizure of the hose was unlawful, having been accomplished without a search warrant, at a place in the apartment remote from Nelson's location, by a private individual working under the direction of the police.

▪ But this is not necessarily the end of the matter, for there is yet to be considered the question of whether such seizure was harmless error under the principles announced in Chambers v. Maroney, 399 U.S. 42, 52–54, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). We hold that it was harmless error. As we have determined, the seizure of the knife and vacuum cleaner pipe was lawful. In addition, the state had evidence corroborating the victim's account of the crime, consisting of the physical marks on her person, and her arrest for soliciting a police officer, which supplied the motive for Nelson's assault.

We are therefore led to conclude that while petitioners did not make a full presentation to the state courts concerning the seizure of the hose, it would be futile for them to do so inasmuch as such seizure was, in any event, harmless error beyond a reasonable doubt.

In our opinion the district court erred in holding that petitioners failed to exhaust state remedies pertaining to the grounds urged for habeas relief. In the process of reaching this conclusion we have necessarily passed upon the merits of those grounds and have determined that they afford no basis for relief. In the course of reaching this result we have made no finding of fact of our own but, where the evidence was in dispute, have assumed the facts to be as urged by petitioners. The conclusion is inescapable that the district court correctly denied the habeas applications, but that, with reference to the claimed illegal search and seizure, such denial should not have been "without prejudice."

The cause is remanded to the district court for entry of an amended order denying the applications without qualification.