**William F. WHITE, Plaintiff,**

v.

**TOWN OF MARBLEHEAD, Sergeant Brian Hitchcock, Officer Donald J. Decker, and Officer Richard Winship, Defendants.**

**Civil Action No. 95–10939–NG.**

United States District Court,
D. Massachusetts.

Dec. 17, 1997.

Brian R. Cunha, Brian Cunha & Associates, Fall River, MA, for Plaintiff.

Denise L. Page, Barron & Stadfeld, Boston, Ma, for Defendant.

## MEMORANDUM AND ORDER

GERTNER, District Judge.

The Plaintiff, Dr. William White ("White"), alleges that his civil rights were violated when he was arrested two days after an incident at a Marblehead restaurant and bar with Sandee Muxica, a woman with whom he was socializing. Shortly after his arrest, the criminal complaint was dismissed when it became clear that the facts on which it was

based were not as the alleged victim had reported them.

Defendants Town of Marblehead and several of its police officers have moved for summary judgment in the above-referenced matter; Plaintiff opposes.

This case brings to light the tension between an individual's right to be free from arrest without probable cause and police procedures deemed essential to protect victims of domestic violence. The facts on this record—although very troubling—are not actionable under the statutes cited. For the following reasons, Defendants' motions are **GRANTED**.

## I. *PROCEDURAL POSTURE*

White filed this action on May 8, 1995, alleging violations of his civil rights under 42 U.S.C. § 1983 and false arrest. He sued the Town of Marblehead, Chief of Police John Palmer, Sergeant Brian Hitchcock and Officers James Hazel, Donald Decker and Richard Winship, on the grounds that they had arrested him without probable cause in violation of state law and the Fourth and Fourteenth Amendments to the United States Constitution.

Defendants filed a motion to dismiss on September 14, 1995. This Court denied Defendants' motion on February 13, 1997. Defendants then filed summary judgment motions on July 31, 1997, which Plaintiff opposed. A hearing on Defendants' summary judgment motions was held on October 29, 1997, at which time counsel for the Plaintiff informed the Court, 1) that Officer Hazel and Chief of Police Palmer were no longer parties to the suit and that, 2) Sergeant Hitchcock was only being sued under 28 U.S.C. § 1983 for a putative violation of the Plaintiff's Fourth Amendment rights but not a Fourteenth Amendment violation.

## II. *FACTS*

On Sunday, March 20, 1994, shortly before 9:00 p.m., Marblehead police officers Donald Decker ("Decker") and Richard Winship ("Winship") were dispatched to Jacob Marley's, a local restaurant and bar. Upon the officers' arrival, they found a young woman alone and crying on a bench in the front lobby of the restaurant, apparently too upset or intoxicated to speak clearly. The woman eventually told the police that her name was Sandee Muxica ("Muxica"), and recounted the following:

She had been assaulted and harassed that evening by a man she described as her boyfriend, William White, and a male friend of White's whose name, police later learned, was David Pierce. Muxica told the officers that White had boasted to her that he had assaulted other women in the past.

Muxica declined the officers' offer to take her to the hospital for medical attention.

Decker and Winship did not speak with anyone else at Jacob Marley's, including the bartender who had placed the call to the police. Decker then drove with Muxica to retrieve belongings she said were hers and were in White's car and apartment. Winship followed Decker and Muxica in his own police car. When they arrived, the apartment was unlit; White's parking space was vacant. No one answered the knock on the apartment door. Decker, Winship and Muxica then drove to the Marblehead Police Department where Decker helped Muxica obtain a temporary protective order against White under Mass.Gen.L.Ch. 209A, §§ 1–10. Both Muxica and Decker spoke by phone with Judge William Melahn, who issued the 209A order. The order was effective from 10:10 p.m. on March 20, 1994, to 4:00 p.m. on March 21, 1994.

Decker, accompanied by Muxica and Officer Buckley, then returned to White's apartment and this time found the Plaintiff's car in his parking space. Muxica identified certain bags in White's car as her own. Both officers knocked on the apartment door but again there was no response. Decker subsequently drove Muxica home, returned to the police station and wrote a report requesting that the Marblehead Police Department's criminal investigations division handle the case.

On the morning of March 21, 1994, Officer James Hazel ("Hazel") reached White at his home and served the 209A protective order on the Plaintiff. White represents that Ha-

zel discussed the legal requirements of the order with him. White also alleges that he recounted to Hazel the events of the previous evening, and claimed that he did not push or harass Muxica. White told Hazel that during dinner, Muxica had informed him that she was not a law student, as he believed, but was a stripper. She also began to "perform" at the table, removing her clothes and exposing her breasts to the bartender and other staff at the restaurant. White claimed he was embarrassed by Muxica's behavior, gave the bartender cabfare for her, and left the restaurant.

In support of the Plaintiff's opposition to Defendants' summary judgment motion, several workers at Jacob Marley's, including the bartender, corroborated White's story and signed affidavits to the effect that they had witnessed the commotion at Muxica's table, that Muxica had indeed flashed her breasts at them and that they saw White leave without her.

Hazel neither prepared a report of his conversation with White nor told anyone in the department of the new information he had obtained.

On March 21, 1994, Lieutenant Kenneth King ("King") of the Marblehead Police Department criminal investigations division applied for a complaint against White on charges of domestic assault and battery. King's criminal complaint relied primarily on Officer Decker's incident report from the previous evening. On the record before me, there is no indication that King conferred with Hazel concerning his encounter with White earlier that day or widened his investigation to include interviews with possible witnesses to the White/Muxica altercation. Later that day, the clerk at Lynn District Court authorized the issuance of a criminal complaint against White for domestic assault and battery. A warrant for the Plaintiff's arrest issued pursuant to Mass.Gen.L.Ch. 265, § 13A.[1]

White was arrested on March 22, 1994, at his Salem office in front of his father, co-workers, and several patients, by Sergeant Brian Hitchcock ("Hitchcock") of the Marblehead Police Department and a member of the Salem Police Department. White was subsequently arraigned and released.

On August 23, 1994, the charge of assault and battery against White was dismissed by a Lynn District Court judge, at the request of the Commonwealth.

### III. SUMMARY JUDGMENT STANDARD

A motion for summary judgment will be granted when all the relevant pleadings, viewed in the light most favorable to the non-moving party, present no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Aponte–Santiago v. Lopez–Rivera*, 957 F.2d 40, 41 (1st Cir.1992); *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990); *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990).

### IV. LEGAL ANALYSIS

Defendants' summary judgment motions assert five claims, that: i) there was probable cause to arrest White on March 21, 1994; ii) there is no constitutionally required duty to investigate beyond a credible complaining witness; iii) the officers did not violate the Plaintiff's Fourteenth Amendment rights to substantive or procedural due process; iv) the officers had "reasonable grounds" to arrest the Plaintiff thereby negating White's state tort claim for false arrest; and, v) even if the defendants' state and federal law claims fail, the officers involved are entitled to common law qualified immunity.

The Plaintiff opposes Defendants' motions for summary judgment by insisting that the officers (1) lacked probable cause to charge him with assault and battery, (2) failed to

---

1. White could have been arrested pursuant to a summons or a warrant. "A summons may be issued instead of a warrant for the arrest of any person upon a complaint for a violation of any provision of this section if in the judgment of the court or justice receiving the complaint there is reason to believe that he will appear upon a summons." Mass.Gen.L.Ch. 265, § 13A. That the Marblehead police chose to arrest via a warrant, while unfortunate under the circumstances, is not actionable under the legal theories presented.

interview witnesses and to investigate the allegations lodged by Muxica against him, (3) engaged in abuse of arrest and notice processes, (4) erroneously obtained a 209A order against him insofar as Muxica was not a "household member" within the meaning of the abuse prevention statute, and (5) that the Town of Marblehead is liable in negligence because it failed to supervise and train its officers properly.

I will address the Defendants' motions by examining first if probable cause to arrest White existed on March 20, 1995, and then whether the facts on which that decision was based changed sufficiently by March 22, 1995.

### A. *Was There Probable Cause to Arrest White on March 20, 1995?*

■ The Plaintiff asserts that there was no probable cause to arrest him based on Muxica's statement alone and, indeed, that the responding officers had an obligation to go beyond her statement and conduct an investigation of White's conduct on March 20, 1995, which they failed to do.

There is no dispute that the officers relied on the victim's comments on March 20, 1995, as the basis for the 209A application, and later the criminal complaint. There is also no question that the failure to interview anyone other than Muxica at Jacob Marley's led to a one-sided version of the incident, and to Plaintiff's arrest. Muxica's view of the incident was not only contradicted by White's (when he was interviewed the following day) but ultimately, in an affidavit filed in connection with this litigation, by the bartender who

had called the police on the evening in question and other witnesses.[2]

The issue is whether the victim's version of the events that evening comprised probable cause to arrest White, or whether the officers had an obligation to investigate further.

Muxica reported an assault, and not simply an assault as between strangers, but one between herself and the person she called her "boyfriend." Although she confirmed that she was not physically injured and that she did not require medical attention, her affect was consistent with the story she recounted. Initially upset and obviously intoxicated, she told a coherent story which the officers found credible. They were entitled to rely on that story; it amounts to probable cause to believe there was an assault and battery.

■ Probable cause is a relatively low threshold, defined "the facts and circumstances within [an officer's] knowledge and of which [he] had reasonably trustworthy information [and that] were sufficient to warrant a prudent [person] in believing the [defendant] had committed or was committing an offense," *Rivera v. Murphy*, 979 F.2d 259, 263 (1st Cir.1992). If reasonable grounds to arrest exist, probable cause is established and there is no further duty to investigate, *Franco–de Jerez v. Burgos*, 876 F.2d 1038 (1st Cir.1989).[3]

■ Credible words describing a coherent and dangerous narrative are enough to establish probable cause, *see, Marx v. Gumbinner*, 905 F.2d 1503 (11th Cir.1990) (a four year-old's verbal accusation that her father sexually assaulted her provided probable

---

2. Decker and Winship did not interview a single witness at Jacob Marley's, any one of whom would have corroborated White's version of what happened at the bar. Had the officers spoken to Eugene Ayott, for example, the bartender on duty and the person who called the police at approximately 8:45 p.m., Decker and Winship would have learned that Muxica lifted up her top prior to the argument, the alleged threats, and White's departure.

3. The Supreme Court's most recent explanation of the relationship between reasonableness and probable cause sets a relatively low hurdle by requiring only a sustainable claim of probable cause on the part of investigating police to war-

rant a lawful arrest. In *Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), a case arising out of a traffic stop, the Court held that the temporary detention of motorists is consistent with the Fourth Amendment prohibition against unreasonable seizures regardless of whether a "reasonable officer" would have been motivated to stop the automobile by a desire to enforce traffic laws as long as probable cause can be established. Here, White's opposition to Defendants' motions fails to present a material issue of fact to refute the officers' claim under either the probable cause or the "reasonable officer" standard.

cause to arrest); *Brodnicki v. City of Omaha*, 75 F.3d 1261 (8th Cir.1996) (a nine year-old who described her near-abductor "fairly well" in an attempted kidnapping case was a credible victim-witness and gave police probable cause to arrest.)

While in this case, the victim's version ultimately proved to be unreliable, permitting the police to rely on a victim's credible statement in order to determine probable cause is critical. The officers are obliged to make split-second decisions. Once there is probable cause to believe that a crime has taken place, the law has recognized the need for urgent and decisive action. For all they know at the time, lives may hang in the balance. This is particularly the case with complaints of "domestic" violence, which have been ignored too often, with tragic results.

A rule requiring police officers to second guess an otherwise coherent and credible witness, to somehow seek corroboration, risks inconsistent and unequal application. Indeed, the Plaintiff's arguments here illustrate the danger. The Plaintiff suggests that Muxica's appearance, her profession and her intoxicated state should have triggered doubts on the part of the responding officers. Nothing in the record, however, suggests that she failed to tell a coherent and credible story.[4]

In fact, the Plaintiff's argument boils down to the suggestion that the officers should have made credibility determinations based on the appearance and status of the parties. Muxica after all, was a stripper at the Golden Banana; White an established Marblehead dentist.[5] The implication is clear: How could the police have believed *her?* How could police have credited her story, given *who* she was, and still have found probable cause?

This line of argument cannot be rejected strongly enough. To their credit, Decker and Winship were not moved by stereotypes and were undaunted by status. Too often, in the past, women's complaints about violence were ignored because of the way they looked, or because they were relatively powerless, or because they were seen as immoral. No one is immune from violence, especially from what initially appeared as a type of domestic violence—not housewives from the pages of women's magazines and not strippers. The Marblehead police were correct to see through the stereotypes and draw their own conclusions.

The Plaintiff cites *B.C.R. Transport Co. v. Fontaine*, 727 F.2d 7 (1st Cir.1984), for the proposition that an alleged victim's story may not be enough to create probable cause for arrest. Whether the victim's story is sufficient, according to *B.C.R. Transport,* is a question of fact to be determined by the jury. In *B.C.R. Transport,* Officer Fontaine, acting on the statements of a "drifter" named John Hubbard, arrested Jack Riley and Richard Restivo, whom Hubbard had accused of kidnapping him. As in the case at bar, Officer Fontaine failed to interview available witnesses before arresting the plaintiffs, despite the fact that the alleged victim, Hubbard, was yelling obscenities and "repeating incoherent phrases," *B.C.R. Transport,* 727 F.2d at 9. In fact, Restivo had provided Hubbard with food, shelter and employment. There had been no kidnapping or false imprisonment.

The *B.C.R. Transport* court held that information supplied by an alleged victim of a crime does not establish *per se* probable cause. Instead, the court found that whether or not probable cause exists in a given case depends on the particular facts and circumstances of the case, *see also, Reeves v. City of Jackson,* 608 F.2d 644, 651 (5th Cir.1979).

Applied to this case, *B.C.R. Transport* is inapposite. Nothing submitted by the Plaintiff establishes that Decker and Winship were unreasonable in their investigation of the White/Muxica altercation. Unlike the complainant in *B.C.R. Transport,* Muxica ul-

---

4. Plaintiff has cited *Mutter v. Town of Salem,* 945 F.Supp. 402, 406 (D.N.H.1996) in which the Court held that a victim's statement may not be enough to establish cause if there is an "indication that the information is not reasonably trustworthy or reliable."

5. Muxica had confirmed to police on the evening of March 20, 1995, that she was a stripper and that the revelation of that fact contributed to the argument between White and Muxica at the restaurant.

timately gave police a credible version of what had transpired that evening, despite her distressed and intoxicated state.

On the basis of Muxica's allegations, Decker and Winship began a three-part investigation, first by attempting to locate White, then by helping Muxica obtain a 209A restraining order and finally by submitting their reports for use in procuring a criminal complaint. Muxica's words and affect, unrebutted by White's version since he could not be located, provided probable cause for White's arrest on the night of March 20, 1995.[6]

█ While it is true that the existence of probable cause depends on the totality of the circumstances, *see, Alexis v. McDonald's Restaurants of Massachusetts, Inc.,* 67 F.3d 341 (1st Cir.1995); *B.C.R. Transport,* 727 F.2d 7 (1st Cir.1984), probable cause conclusions may be predicated on information furnished by a credible victim, *see, United States v. Mahler,* 442 F.2d 1172, 1174–75 (9th Cir.1971), *cert denied,* 404 U.S. 993, 92 S.Ct. 541, 30 L.Ed.2d 545 (1971). Such determinations may be made on the basis of words, when, in the opinion of a prudent person, or one of reasonable caution, "the person to be arrested has committed, is committing, or is about to commit an offense." *U.S. v. McQueeney,* 674 F.2d 109, 114 (1st Cir.1982).

I am persuaded that the investigating officers reasonably listened to Muxica's claims of assault, sought out White for his version, and when they could not find him, appropriately relied on Muxica's version in submitting a request for the Plaintiff's arrest.

**B.  *Did the Marblehead Police Confuse the Standard for a 209A for Probable Cause?***

█ The Plaintiff's opposition also suggests that probable cause was unfounded because the 209A was erroneously issued since White and Muxica did not qualify as spouses and were not involved in a "substantive dating relationship." Mass.Gen.L.Ch. 209A § 1(e). But here, the protective order and the warrant for White's arrest were distinct determinations. Muxica's misrepresentation of the depth of her relationship with White was not the hook upon which the probable cause determination rested.[7] By arguing that because White and Muxica's relationship was not sufficiently deep, Officers Decker and Winship were "objectively unreasonable" in seeking a 209A, the Plaintiff confuses reasonableness in the issuance of a 209A with reasonableness for the purpose of formulating probable cause.

In retrospect, the Plaintiff is plainly correct that his relationship with Muxica was not the sort of association contemplated by the domestic abuse prevention statute. The 209A statute exists to minimize domestic abuse by a family or household member.[8]

6. Plaintiff contends that absent evidence of physical assault, torn clothing or a desire to seek medical attention, Muxica's statements were insufficient to generate probable cause. Plaintiff points to *Nelson v. Moore,* 470 F.2d 1192 (1st Cir.1972), as an example of probable cause to arrest founded on a victim's statement and corroborating, visible, physical marks of abuse. While the facts in *Nelson* provide probable cause to arrest, the reverse is not necessarily true: an informant victim need not show that she is injured to permit police to find probable cause to arrest the alleged assailant.

7. White claims no damage deriving from the 209A, independent of the decision to arrest. In any event, the costs to White of the 209A—registration of the fact that the order was served—are *de minimis* in comparison to the threat posed by inaction on the part of police.

8. Mass.Gen.L.Ch. 209A exists to enable victims of domestic violence to distance themselves from their batterers. The statute permits an endangered household member to interject the power of the state between the victim and the alleged perpetrator. Mass.Gen.L. Ch 209 §§ 1–10 (1996) section one defines abuse as the occurrence of one or more of the following acts between family or household members, defined to include persons who (a) are or were married to one another; (b) are or were residing together in the same household; (c) are or were related by blood or marriage; (d) having a child in common regardless of whether they have ever married or lived together; or (e) are or have been in a substantive dating or engagement relationship, which shall be adjudged by the district, probate or Boston Municipal Court's consideration of the following factors: (1) the length of time of the relationship; (2) the type of relationship; (3) the frequency of interaction between the parties; and, (4) if the relationship has been terminated by either person, the length of time elapsed since the termination of the relationship.

The "substantive dating relationship" language of the statute is clearly a proxy for a close domes-

But probable cause to arrest is different. Acquaintances can assault other acquaintances. While the choice to seek the 209A may well have contributed to the same sense of gravity that informed the police department's decision to arrest White, it is insignificant as a legal matter. The wisdom of an *ex parte* restraining order has no bearing on the question of whether the police had probable cause to arrest.

### C. Did Anything Change Between March 20, 1995, and March 22, 1995, to Vitiate Probable Cause?

■ White argues that whatever the state of the officers' information, by the time of White's arrest, two days later, the police department's collective knowledge of the events undermined their earlier conclusions; as a result, they no longer had probable cause to arrest White. Whether they had an obligation to corroborate Muxica's story or not, by March 22, they had heard White's

account which should have tipped the balance against probable cause.[9]

■ The argument is not without some merit. Having had the opportunity to interview White, the police were obliged to consider that information in evaluating probable cause.[10] The problem is that the Plaintiff has sued the wrong officer. White has sued Hitchcock rather than King or Hazel, the officers who were more directly responsible for the arrest. Hitchcock's role in this investigation was entirely ministerial. He simply served the arrest warrant obtained by King. King made the decision that there was probable cause sufficient to obtain a warrant.

In any event, while probable cause to arrest a suspect that exists at Time 1 may be lost at Time 2 by the introduction of intervening or superseding, exculpatory, or contrary knowledge, nothing submitted by the Plaintiff casts sufficient doubt on the probable cause held by Decker and Winship on

tic relationship between an individual living with, or near, another. In the face of domestic violence or private disputes that spill into the public domain, as in the case at bar, police are asked to make discretionary determinations of family and social status. Because the distinction between a "girlfriend" and a "date" is difficult to make, any resulting error was harmless for the purpose of this suit.

9. White's conversation with Hazel on March 21, 1995, is significant because it brought to light his version of events. White represents that he was surprised by Hazel's presence and asked what consequences attached to the 209A. White was told that he had nothing to worry about as long as he avoided Ms. Muxica until the expiration of the restraining order. (In fact, White and Muxica had no contact on March 21, 1995, and the 209A expired without incident). White then told Hazel that he had known Muxica for less than a week and that he had not threatened or assaulted Muxica on the previous night. White explained that he left Muxica when he learned, through her statements and actions, that she was a stripper and not a law student, as he had previously believed. Twenty-four hours later, King relayed an arrest order to Hitchcock.

10. Police officers in Massachusetts may not consciously disregard exculpatory evidence that serves to discredit an earlier probable cause determination, *Commonwealth v. Walker*, 370 Mass. 548, 350 N.E.2d 678, 688 (1976). Probable cause is instead a product of all of the knowledge available to an arresting officer. Considerable latitude is given to police to consider reasonable

factors within that totality, even if they eventually prove to be faulty, *see, Gero v. Henault*, 740 F.2d 78 (1st Cir.1984), *cert. denied*, 469 U.S. 1191, 105 S.Ct. 965, 83 L.Ed.2d 970, (affirming that facially valid arrest warrants do not violate suspect's constitutional rights even if they are in fact invalid). Applied to this case, part of the totality of the circumstances test must include an evolving assessment of all relevant information obtained between the interview with the victim and the time of White's arrest.

Whether Hazel's information may be imputed to other police officers is a different matter. Plaintiff urges this Court to adopt the "collective knowledge" rule announced by the Second Circuit in *United States v. Carr*, 445 F.Supp. 1383, 1385 (D.Conn.1978) to find that whether or not Hazel reported his encounter with White to Lt. King, the Marblehead police as a whole had sufficient knowledge on March 21, 1995, to erode the probable cause that existed on March 20, 1995.

No court in this circuit has spoken on the question of cumulative or collective knowledge as a basis for determining probable cause. To the extent that *U.S. v. Klein*, 522 F.2d 296, 299 (1st Cir.1975) addresses the issue indirectly, the First Circuit has stated only that probable cause is to be assessed in light of the facts and circumstances actually known or chargeable to the arresting officer. *Klein*, 522 F.2d at 299.

In any case, Plaintiff's claim is irrelevant. The critical decisionmaker on the arrest was King, no matter what the standard was, and he was not sued.

March 20, 1995, to invalidate White's arrest. Even assuming that White provided the relevant officers with a plausible and coherent explanation for the altercation at Jacob Marley's, the police were entitled to disbelieve White's explanation, just as they do with many exculpatory statements that surface in the course of routine arrests.

I have no doubt that it was traumatic and humiliating for White to be arrested under the circumstances. It was, however, the legal consequence of an adequate police investigation of the March 20, 1995, incident. There is simply no constitutional requirement that the police investigate further, when there is a credible victim.[11]

If none of the officers named acted unlawfully, the Town of Marblehead is likewise without liability. As the determination of state false arrest pivots on a finding of no probable cause, this claim is also without merit.

Defendants' motions for summary judgment [docket entry numbers 37, 39, 43, and 47] are therefore **GRANTED**.

**SO ORDERED.**

11. In view of my holding that probable cause to arrest existed on both March 20, 1995, and March 22, 1995, with respect to the parties sued, I find it unnecessary to consider whether qualified immunity attaches to the remaining parties.