Anita D. **BORLAWSKY,** Plaintiff,

v.

**TOWN OF WINDHAM,**
et al., Defendants.

No. Civ. 99–272–P–H.

United States District Court,
D. Maine.

Sept. 26, 2000.

**28**

Grover G. Alexander, Gray, ME, for Anita D Borlawski, plaintiff.

John J. Wall, III, Monaghan, Leahy, Hochadel & Libby, Portland, ME, for Town of Windham, Michael R. Denbow, defendants.

Mark G. Lavoie, Norman, Hanson & Detroy, Portland, ME, for Scott Losciuto, defendant.

Barri L. Bloom, Richardson, Whitman, Large & Badger, Portland, ME, for Janette Losciuto, defendant.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

HORNBY, Chief Judge.

This dispute arises out of a confrontation between a mother and her teen-aged daughter. Foul names were exchanged, the mother struck the daughter and made a threat of some sort (the manner and the nature of both the physical contact and the threat are disputed). The episode, or parts of it, occurred in the presence of another child and the grandmother, the divorced husband's mother. As a result, the grandmother called the father/divorced husband and, on his advice, proceeded to call law enforcement authorities. The father/divorced husband also called law enforcement authorities. Ultimately the mother was arrested and charged with domestic violence assault. She was acquitted. The father/divorced husband sought a protection from abuse hearing on behalf of the children and, as a result, the plaintiff lost custody of the two children to her divorced husband. Subsequently and in an obvious effort to vindicate herself, she brought this lawsuit for damages in state court against the divorced husband, the grandmother, law enforcement officers and their employers. The defendants removed it to federal court. The remaining defendants have moved for summary judgment.

It should be apparent from this brief description that no one will ever know finally who was right or wrong or, more likely, to what degree they were right or wrong in this unfortunate family dispute. There have already been two trials in state court growing out of the episode. Neither the plaintiff nor the defendants are ever going to have complete satisfaction; that is not the nature of these kinds of disputes,

and because children are involved, the wounds here will not heal quickly, if ever. The plaintiff has a long list of claims against the defendants; most of them are state claims, and at least one of them involves interpretation of a "unique" state statute that I have already referred to as worthy of certification to the Maine Law Court. As a federal judge, I address only the narrower federal claims and conclude that the defendants are entitled to summary judgment on all of them. Judgment shall be entered accordingly and the remaining state claims will be remanded to state court. 28 U.S.C.A. § 1367(c) (West 1993). This outcome is particularly appropriate here where one of the state law claims (civil perjury) raises unique and difficult issues of state law. *See* Order, Dec. 22, 1999, at 4 (order denying motion to dismiss).

### DIVORCED HUSBAND/FATHER AND GRANDMOTHER

■■■ The only explicit federal claim against Scott Losciutto, the children's father, and against Janet Losciutto, the children's grandmother, is a claim under 42 U.S.C.A. § 1985(3), the civil rights conspiracy statute. Coverage of that statute, however, is limited to conspiracies based upon racial or some other class-based invidious discrimination. *See Romero–Barcelo v. Hernandez–Agosto*, 75 F.3d 23, 34 (1st Cir.1996). There is no evidence of any such conspiracy here. The class for which the plaintiff claims protection is "divorced or otherwise single women parents." Pl.'s Mem. in Opp'n to Def. Scott Losciuto's

1. Moreover, the only motivation disclosed by the summary judgment record is personal dislike. The plaintiff admitted the following factual assertion by Scott Losciuto:

   [T]he Plaintiff identified her allegations concerning Scott Losciuto's motivation for his actions: "Since our divorce in 1987, Scott has always wanted to 'get even' with me for having him arrested for assaulting me. He always[sic] felt that I give him a hard time about child support. He was always behind in his payments. He has always been motivated by revenge and a wish to avoid paying child support. I took him to Court on this issue as well. Scott does not like

Reply Mem. at 6. That is not a recognized class.[1] To the extent that the plaintiff is stating a separate claim against Scott or Janet Losciuto under 42 U.S.C.A. § 1983 (the Complaint is unclear), it fails for lack of state action on the part of Scott or Janet Losciuto, who are private parties. *See Gonzalez–Morales v. Hernandez–Arencibia*, 221 F.3d 45, 49 (1st Cir.2000).

### TOWN OF WINDHAM AND POLICE OFFICER DENBOW

■■■ There are two federal claims against the Windham defendants. The primary one is that there was no probable cause for the arrest initiated by Officer Denbow. But the plaintiff does not contend that the witness statements Officer Denbow had received, if believable, failed to provide probable cause; the plaintiff's argument is that Officer Denbow should not have believed them and should have done more investigation to test the credibility of these witness statements. I find no support for that proposition. *See, e.g., United States v. Bonilla Romero*, 836 F.2d 39, 46 (1st Cir.1987) (noting that probable cause does not require police officers to investigate every possibility of innocence and doing so burdens public safety); *Kelley v. Myler*, 149 F.3d 641, 646–47 (7th Cir.1998) (holding that once probable cause is established, officer is not required to investigate further); *Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123, 128 (2d Cir.1997) (holding that police officer is not required to explore and eliminate all theoretically plausible claims of innocence);

me and I believe he is still fighting the battles which occurred during our marriage." *See* [Pl.'s Ans. to Interrogs. Propounded by Def. Scott Losciuto at ¶ 26]; *see also* Pla.'s Opposing SMF at ¶ 51.

Reply Statement of Material Facts ¶ 4. For the admission, *see* Pl.'s Statement of Material Facts in Opp'n to Def. Scott Losciuto's Reply Statement of Material Facts ¶ 4. The plaintiff goes on to say that Scott Losciuto's motivation is "further explained in the Anita Borlawsky Affidavit" at paragraphs six and seven. *See id.* Neither paragraph suggests a class-based motivation for Scott Losciuto's and Janette Losciuto's actions.

*Brodnicki v. City of Omaha*, 75 F.3d 1261, 1264 (8th Cir.1996) (noting that officers are not required to conduct mini-trials before arrest). On probable cause ·determinations, courts do not second guess the credibility determinations of law enforcement officers on the scene. *See Baker v. McCollan*, 443 U.S. 137, 145, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); *White v. Town of Marblehead*, 989 F.Supp. 345, 350 (D.Mass.1997). This especially holds true for officers investigating complaints of domestic violence. *See White*, 989 F.Supp. at 350 (noting that after determining probable cause, the law has recognized the need for "urgent and decisive action," particularly in situations of domestic violence).

The second federal claim, excessive force and substantive due process, is barely pressed. The Plaintiff's entire argument on that topic is the following:

> Assuming, arguendo, that the arrest was based upon probable cause, ANITA still maintains that the force used to effect and maintain the arrest was excessive, and that DENBOW'S conduct in kicking her, watching her go to the bathroom, keeping her in cuffs behind her back, and his failure to comply with the statutory procedure for the handling of and transporting of persons to a mental hospital, *34–B M.R.S.A. §§ 3862, 3863*, as well as the applicable General Order 2–12 setting forth his department's operating procedure for handling deviant behavior is a substantive due process violation. DENBOW claims to have ultimately regarded ANITA as a person exhibiting deviant behavior and acted accordingly.

Pl.'s Resp. to Defs. Windham and Denbow Mot. for Summ.J. at 8. The plaintiff's summary treatment of this argument justifies equally summary treatment by the court. The Plaintiff's evidentiary support for these allegations reveals that the monitoring of her bathroom activities occurred in the psychiatric ward of the hospital where she had been involuntarily admitted after a medical advisor advised Officer Denbow to take her there for examination. Borlawsky Dep. at 57–59, 185. The alleged "kick-ing" occurred earlier at the police station, when she says that she passed out from low blood sugar and fell from a bench to the floor:

> And I˙ was on˙ the floor and my hands were still handcuffed behind my back and Officer Denbow said—he started kicking˙ me on my outer left thigh from my knee to my hip. He was kicking me and telling me to get up off that floor, stop your faking, you know, stop the dramatics, you know.

Q. When you say he was kicking you, what do you mean, how was he kicking you?

A. You want me to demonstrate?

Q. Well, I mean was he like winding up and kicking you or was he just nudging you with his foot?

A. No, he was kicking me, you know, kicking me.

Q. And was this while you were unconscious?

A. Yes.

Q. How did you know he was kicking you if you were unconscious?

A. Well, because I was coming in and out and I could feel it. I could feel every time he kicked me. . . .

Borlawsky Dep. at 51–2.

█ I assume that observing intimate activity of an arrestee without justification can sometimes be a Fourth Amendment violation, but the plaintiff's evidence simply does not make that case here under the circumstances of involuntary admission to a psychiatric ward on a doctor's advice with concern for the plaintiff's risk to herself or others. *See Cookish v. Powell*, 945 F.2d 441, 447 (1st Cir.1991) (noting that inadvertent, occasional, casual and restricted observation of inmate's body by an officer of opposite sex does not violate the Fourth Amendment and emergency circumstances, like harm to oneself, allows more direct observation); *Ellis v. Meade*, 887 F.Supp. 324, 332 (D.Me.1995) (holding that officer's view of plaintiff's shower, in light of his suicide

watch, did not violate the Fourth Amendment). Likewise, kicking an arrestee can amount to unconstitutional use of excessive force, but the encounter the plaintiff describes in her deposition, while perhaps unprofessional as she describes it, does not meet the constitutional standard to make out a substantive due process violation. *See Ellis*, 887 F.Supp. at 329 (holding that officer's patting pretrial detainee on the buttocks does not rise to the level of punishment to constitute a constitutional violation). Because the incident was isolated and in an effort to get the plaintiff off the floor of the police station, *see* Borlawsky Dep. at 51–52, the kicking was not so arbitrary or purposeless so as to lead to an inference of an intent to punish the plaintiff. *See Ellis*, 887 F.Supp. at 329. The use of handcuffs for an arrestee is obviously justifiable, *see Gold v. City of Miami*, 121 F.3d 1442, 1446 (11th Cir. 1997); *Foster v. Metropolitan Airports Comm'n*, 914 F.2d 1076, 1082 (8th Cir. 1990) and any failure to comply with a state statute or a police department order does not make out a constitutional violation. *See Bell v. Wolfish*, 441 U.S. 520, 543, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) (noting that draft recommendation of Federal Corrections regarding conditions of confinement are not determinative of requirements of the Constitution); *Soares v. Connecticut*, 8 F.3d 917, 922 (2d Cir.1993) (holding that Department of Environmental Protection handcuffing policy has no bearing on whether officers violated constitutional rights).

Accordingly summary judgment shall be entered for the remaining defendants on all the plaintiff's federal claims and the remaining state claims are REMANDED to state court.

SO ORDERED.