### Theron ROSE, Plaintiff,

v.

### The TOWN OF CONCORD; Jeffrey Melisi, Individually; Jeffrey Shelley, Individually; James Forten, Individually; Roy Patrick Mulcahy, Individually, Defendants.

Civil Action No. 96–11485–WGY.

United States District Court, D. Massachusetts.

July 15, 1997.

Matthew Tuttle, Perkins, Smith & Cohen, Boston, MA, Michael Avery, Susan E. Stenger, Perkins, Smith & Cohen, Boston, MA, for Plaintiff.

Douglas I. Louison, Merrick and Louison, Boston, MA, for Defendants.

YOUNG, District Judge.

Theron Rose ("Rose") commenced this action alleging violations of 42 U.S.C. § 1983 (Count I), assault and battery (Count II), false arrest and imprisonment (Count III), and negligence under the Massachusetts Tort Claims Act, Mass. Gen. L. ch. 258, § 4 (Count IV), against police officers Jeffrey Melisi ("Melisi"), Jeffrey Shelley ("Shelley"), James Forten ("Forten"), and Roy Patrick Mulcahy ("Mulcahy") (collectively the "Officers"), as well as their employer, the Town of Concord (collectively the "Defendants"). The Defendants moved for summary judgment on all counts, with the officers contending that they are entitled to qualified immunity as to the section 1983 claims.

On June 5, 1997, this Court heard oral argument on the motion for summary judgment. At the hearing, the Court denied the motion as to 1) the Massachusetts Tort Claims Act count, and 2) the section 1983 claim against Melisi and Mulcahy to the extent that Rose alleges that one or both of them kicked him in the back. The Court took under advisement whether the Officers were entitled to qualified immunity with respect to the section 1983 claim for stopping Rose's van and arresting him without probable cause. This Court also took under advisement whether the Officers had committed assault and battery during the stop of Rose's vehicle and whether they falsely arrested and imprisoned Rose when they detained and transported him to the station.

## I. *Background*

On August 27, 1993, at approximately 10:00 p.m., a radio operator for the Town of Concord Police Department dispatched a call to all units that an unknown white male had entered the White Hen Pantry wielding a knife. A second radio call advised that the suspect had entered a red van bearing a particular license plate number. Within minutes of the call, Officers Melisi and Mulcahy located Rose's van—which matched the description and bore the reported license plate number—and pulled it over. Shortly thereafter, Officers Forten, Mulcahy, and Sergeant Ryan arrived and assisted in the vehicle stop. After drawing their handguns and pointing them in the direction of the van, the Officers removed the occupants of the van.

Rose, who had been driving, was the first person ordered from the van.[1] After Rose had been directed to the rear of a police cruiser, Melisi ordered him to his knees, handcuffed him, and searched him for weapons. No weapons were found on Rose's person.[2] Melisi then assisted Rose to his feet and moved him to the passenger side of a second police cruiser.

Rose alleges that, at that point, Melisi had him kneel again and that Melisi and Mulcahy then kicked him to the pavement from behind, causing injuries to his face. Melisi and Mulcahy maintain that they used the minimal force necessary to place Rose in the prone position. Shelley eventually placed Rose in Forten and Shelley's police cruiser. Shelley testified that, at the time Rose was secured in his police cruiser, he believed that Rose had been involved in an attempted armed robbery or an assault with a dangerous weapon.

After the remaining occupants of Rose's van had been handcuffed, Sergeant Ryan

---

1. All Officers have testified upon being deposed that Rose, the driver of the van, had an odor of alcohol on his breath. Though Rose admits to drinking alcoholic beverages that evening just prior to the stop, Rose stated in his deposition that at no time during that evening was he intoxicated, impaired, or otherwise under the influence of alcohol.

2. According to Sergeant Ryan's testimony, a knife was later recovered from the inside of Rose's van.

ordered all of the Officers to holster their weapons. Sergeant Ryan then instructed the Officers to perform a series of tasks. Mulcahy was told to locate and retrieve the witness from the White Hen Pantry. Shelley and Forten were ordered to conduct an inventory search of the van and a visual search of the area of the stop. Eventually, Sergeant Ryan directed Forten to take Rose and the other two suspects to the station. At the station, Rose was placed in a cell for approximately two minutes, and released from custody within ten minutes. Rose was never charged with a crime.

Rose commenced this action to recover against the Defendants for the injuries he received as a result of his allegedly unlawful arrest.

## II. *Discussion*

A. *Qualified Immunity under 42 U.S.C. § 1983*

■ Rose alleges that the Officers' actions in removing him at gunpoint from the van and placing him in a cruiser for transportation to the police station amounted to an arrest without probable cause in violation of 42 U.S.C. § 1983. The Officers counter that they are entitled to qualified immunity because their actions in both stopping and arresting Rose were objectively reasonable.

■ Qualified immunity shields government officials from liability for civil damages when their actions "[do] not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).

■ In applying this standard to arrests, the First Circuit has held that "a police officer should not be found liable under § 1983 for a warrantless arrest because the presence of probable cause was merely questionable at the time of the arrest." *Floyd v. Farrell*, 765 F.2d 1, 5 (1st Cir.1985). An Officer's "qualified immunity is pierced only if there clearly was no probable cause at the time the arrest was made." *Id.; see also Topp v. Wolkowski*, 994 F.2d 45, 48 (1st Cir.1993). Police officers are thus protected by qualified immunity "so long as the presence of probable cause is at least arguable." *Rivera v. Murphy*, 979 F.2d 259, 263 (1st Cir.1992) (quoting *Ricci v. Urso*, 974 F.2d 5, 7 (1st Cir.1991)); *see also Thompson v. City of Portland*, 612 F.Supp. 390, 393 (D.Me. 1985) (citing *Floyd*, 765 F.2d at 5) (even if factual circumstances surrounding arrest are "extremely close," police officer entitled to qualified immunity if existence of probable cause is "subject to legitimate debate and reasonable disagreement").

With respect to Rose's allegation that he was unreasonably arrested at the moment he was removed from his van at gunpoint, the record establishes that the Officers acted in an objectively reasonable manner. The Officers stopped a fully identified van which, to their knowledge, contained a **knife wielding** suspect. Although the dispatched radio call was not extremely detailed as to the alleged illegal acts committed by the occupants of Rose's van, it was sufficient to create a reasonable belief that a serious crime had been committed by one, if not all, of the occupants of the van. Accordingly, the Officers are entitled to qualified immunity for their actions in removing Rose from the van at gunpoint.

■ Rose further asserts that the Officers subjected him to an arrest without probable cause when they transported him to the station. The undisputed record, however, establishes that Sergeant Ryan directed the actions of the Officers at the scene and that he in fact ordered the arrest of Rose. It is presumptively reasonable for a police officer to follow the order of a superior officer so long as that order does not violate a clearly established constitutional or statutory right. Here, although the existence of probable cause is vigorously disputed, nothing in the

record suggests that, at the time they took Rose to the station, the Officers were aware that they did not have probable cause to arrest him. The Officers are therefore also entitled to qualified immunity with respect to this component of Rose's section 1983 claim.

### B. Assault and Battery

 Rose contends that the Officers subjected him to an assault and battery when they pointed their handguns at him and handcuffed him. The officers argue that there was no touching, or other use of force, that amounted to an assault and battery.[3] The critical question in an assault and battery claim against a police officer is whether the officer used intentional and **unjustified** force upon the person of another. *Powers v. Sturtevant*, 199 Mass. 265, 266, 85 N.E. 84 (1908). An "officer authorized to make an arrest may use 'such force as is reasonably necessary to effect the arrest.'" *Julian v. Randazzo*, 380 Mass. 391, 396 n. 1, 403 N.E.2d 931 (1980) (quoting trial judge's jury instructions); *see also Powers*, 199 Mass. at 266, 85 N.E. 84 (police officer may not be held liable for using force to effectuate an arrest unless amount of force used was "of such excess it was unwarranted and unjustifiable").[4]

In this case, the Officers had received dispatched information that an occupant of Rose's van had just wielded a knife inside the White Hen Pantry. Though the Officers' actions in pointing their handguns at Rose were intentional, nothing in the record sug-

gests that the Officers' use of force was unjustified or went beyond what was reasonably necessary to secure both their own safety and the safety of the general public. Indeed, the undisputed record makes clear that, after the occupants of Rose's van had been secured, Sergeant Ryan ordered all the Officers to holster their weapons. Police officers cannot be expected to confront knife wielding suspects unprepared. Accordingly, this Court rules that the Officers were justified in drawing their handguns and handcuffing Rose, and are therefore entitled to summary judgment on this issue.

### C. False Arrest and Imprisonment

 Rose alleges that the Officers subjected him to false arrest and imprisonment, either at the time he was removed from the van at gunpoint and subjected to a loss of liberty, or at the moment he was transported to the station. The Officers argue that their initial detention of Rose was justified, lawful, and no more than an investigatory stop. They further argue that their transport of Rose to the station was justified because they were following the orders of Sergeant Ryan.

 The tort of false imprisonment requires an unlawful restraint of a person's freedom of movement by force or threats. *Wax v. McGrath*, 255 Mass. 340, 342, 151 N.E. 317 (1926). Restraint by a police officer will constitute false imprisonment unless the police officer had a legal justification. *Id.*[5] The Supreme Judicial Court has held

---

3. This Court has already ruled that Rose has an actionable assault and battery claim against Melisi and Mulcahy for allegedly kicking Rose to the ground.

4. In the criminal context, Massachusetts courts have recognized that "[t]he police are entitled to take reasonable precautions for their protection. Whether the force used by the police is justified depends upon the extent of the danger at the time force is used. Depending on the circumstances, the police may approach a suspect with guns drawn and may block escape...." *Commonwealth v. Joshua*, No. 94–519, 1995 WL 750156, at *7 (Mass.Super.Ct. Nov. 3, 1995) (Neel, J.) (citing *Commonwealth v. Willis*, 415 Mass. 814, 819–20, 616 N.E.2d 62 (1993)). Police officers are "not required to gamble with their personal safety." *Commonwealth v. Robbins*, 407 Mass. 147, 152, 552 N.E.2d 77 (1990).

5. In a number of criminal cases, the Supreme Judicial Court has held that, during a justified vehicle stop, police "officers may take reasonable precautions for their own safety, including 'ordering occupants out of a car for questioning.'" *Commonwealth v. Moses*, 408 Mass. 136, 142, 557 N.E.2d 14 (1990) (citing *Robbins*, 407 Mass. at 151–52, 552 N.E.2d 77; quoting *Commonwealth v. Ferrara*, 376 Mass. 502, 505, 381 N.E.2d 141 (1978)). Police officers may also draw their weapons and order suspects from a vehicle so long as their actions are precipitated by the actions of an occupant of the vehicle and the officers are in fear for their own safety or the safety of others. *Id.* at 141–42, 557 N.E.2d 14 (citing *Commonwealth v. Bottari*, 395 Mass. 777, 781, 482 N.E.2d 321 (1985)).

**52**

that when arresting for a felony, "[police officers do] not need to show that a felony had actually been committed; it [is] enough if they believed upon reasonable cause that the person being arrested had committed a felony." *Julian,* 380 Mass. at 394, 403 N.E.2d 931 (citing *Muniz v. Mehlman,* 327 Mass. 353, 356, 99 N.E.2d 37 (1951)).

This Court rules that the evidence in the record establishes that, at the time Officers stopped Rose's van, and at the time Rose was transported to the station, the officers reasonably believed that Rose had committed a felony. Indeed, Officer Shelley testified that he believed Rose had been involved in an armed robbery or armed assault at the White Hen Pantry. The Officers' actions in drawing their weapons and ordering the suspects from Rose's van were clearly precipitated by the fear that an occupant of Rose's van had committed a felony and may, in fact, still have possessed a weapon. Moreover, at the time Rose was transported to the station, nothing in the record suggests that the Officers had changed their beliefs that Rose had committed a felony.[6] Accordingly, the Officers are entitled to summary judgment on this issue.

### III. *Conclusion*

For the foregoing reasons, this Court hereby *GRANTS* the Defendants' motion for summary judgment with respect to 1) Rose's section 1983 claim against the Officers for stopping his van and arresting him without probable cause, 2) Rose's claim of assault and battery against all the Officers for the stop of his vehicle, and 3) Rose's claim of false arrest and imprisonment. Thus, Rose may proceed with 1) the section 1983 claim against Melisi and Mulcahy for alleged excessive use of force. 2) the assault and battery claim against Melisi and Mulcahy for allegedly kicking Rose in the back, and 3) the Massa-

chusetts Tort Claims Act count against the Town of Concord for its alleged failure properly to train it Officers.

---

**6.** Although not raised by the Officers, Mass. Gen. L. ch. 263, § 3 provides a limited immunity to police officers for actions of false imprisonment. That section states:

> No action, except for use of excessive force, shall lie against any officer *other than the arresting officer,* by reason of the fact that, in good faith and in the performance of his duties, he participates in the arrest or imprisonment of any person believed to be guilty of a crime unless it can be shown that such officer

in the performance of his duties took an active part in the arrest or imprisonment aforesaid, either by ordering or directing that said arrest or imprisonment take place or be made, or *by actually initiating the making and carrying out of said arrest and imprisonment.*

Mass. Gen. L. ch. 263, § 3 (emphasis added). This section is not applicable here, as all the Officers took part in the carrying out of Rose's arrest and imprisonment. *See Santiago v. Fenton,* 891 F.2d 373, 384 (1st Cir.1989).