Juris SIETINS, Plaintiff,

v.

Charles JOSEPH, et al, Defendants.

No. CIV.A.01–10881–JGD.

United States District Court,
D. Massachusetts.

Jan. 6, 2003.

Damon Scarano, Boston, MA, for Juris Sietins, Plaintiff.

Joseph L. Tehan, Jr., Jonathan M. Silverstein, Kopelman & Paige, P.C., Douglas I. Louison, Louison & Costello, Boston, MA, for Charles R. Joseph, Edward Dunn, Ronald M. Carpenter, Defendants.

## MEMORANDUM OF DECISION AND ORDER ON MOTION OF DEFENDANTS RONALD M. CARPENTER, EDWARD DUNNE, AND CHARLES R. JOSEPH FOR SUMMARY JUDGMENT[1]

DEIN, United States Magistrate Judge.

### I. INTRODUCTION

This action arises out of the arrest of the plaintiff, Juris Sietins ("Mr.Sietins"), based on a false complaint of larceny made by the defendants, William Wallace ("Mr.Wallace") and Martin Ward ("Mr.Ward"), who were employed by the defendant, Maine Post and Beam of Cape Cod ("Maine Post"). In reliance on this false charge, the defendants Charles Joseph, Edward Dunne, and Ronald Carpenter, Police Officers of the Town of Falmouth (collectively the "Police Defendants"), caused a criminal complaint and arrest warrant to be issued by a Clerk Magistrate of the Falmouth District Court. Mr. Sietins was arrested by members of the Sandwich Police Department, none of whom are parties to this action. The charges were eventually dismissed after Messrs. Wallace and Ward recanted their allegations.

Mr. Sietins filed a six count complaint, alleging that all the defendants are liable for defamation, slander and libel (Count I), intentional infliction of emotional distress (Count II), malicious abuse of process (Count III), violation of plaintiff's constitutional rights under 42 U.S.C. § 1983, and Mass. Gen. Laws ch. 12, §§ 11H and 11I (Count IV), assault and battery (Count V), and false imprisonment (Count VI). The defendants Messrs. Ward and Wallace, and Maine Post (collectively the "Defaulting Defendants") failed to respond to the complaint and have been defaulted.[2] The Police Defendants have moved for summary judgment on all counts of the complaint (Docket # 28). For the reasons detailed herein, the motion is ALLOWED.

### II. STATEMENT OF UNDISPUTED FACTS[3]

The Police Defendants filed a statement of undisputed material facts in accordance with Local Rule 56.1, as well as a supporting memorandum. In opposing the motion for summary judgment, Mr. Sietins filed only an affidavit, essentially verifying the complaint's allegations, but no opposing memorandum or statement of undisputed material facts. The material facts which the plaintiff has not controverted shall be deemed admitted pursuant to L.R. 56.1.[4]

1. The appearing parties consented to transfer the case to this court for all purposes, including trial and the entry of final judgment, pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73.

2. An assessment of damages hearing was held to address the damages which were to be awarded against the Defaulting Defendants. The court has, on this date, issued its "Findings of Fact and Rulings of Law on Plaintiff's Damages Against Defendants Martin Ward, William Wallace, and Maine Post and Beam of Cape Cod."

3. This statement of facts applies only to the Police Defendants. As a result of their default, all well-pleaded allegations of the complaint relating to liability are deemed true as to the Defaulting Defendants. *See Eisler v. Stritzler*, 535 F.2d 148, 153 (1st Cir.1976).

4. At the hearing on the motion for summary judgment, counsel for the Police Defendants orally moved to strike paragraphs 9, 13, and

## Background Facts

In the Summer of 2000, Mr. Sietins and his work crew were hired as subcontractors to sidewall (shingle) houses being built by Maine Post, a company which builds upscale homes on Cape Cod, Massachusetts. (*See* Sietins Dep. at 24, 27, 30; *see also* Compl. ¶ 9). Mr. Ward is a partner in Maine Post, and Mr. Wallace was the Maine Post project manager on the sites relevant to this litigation. (Sietins Dep. at 27–28).

The defendant, Officer Dunne, owned the first home Mr. Sietins sidewalled for Maine Post. (*See id.* at 25). Although the home was completed nine days late, Mr. Sietins completed his work on Officer Dunne's home without incident. (*See id.* at 7, 28–31; *see also* Dunne Aff. ¶ 10). During the time he worked on Officer Dunne's home, Mr. Sietins did not have any confrontations with Officer Dunne or have any untoward interactions with him. (*See* Sietins Dep. at 7). Rather, Mr. Sietins had friendly discussions with Officer Dunne during the project. (*See id.*).

While working on Officer Dunne's house, Maine Post informed Mr. Sietins it had a second home for him to sidewall in Falmouth, Massachusetts. (*See id.* at 30). In connection with this project, Mr. Sietins and Mr. Ward orally agreed that Mr. Sietins would purchase an air compressor on Maine Post's account, deduct the purchase price from the amount that he ultimately billed Maine Post for his work, and keep the compressor. (*See id.* at 37–38, 40–43, 48). Mr. Sietins and his crew needed the compressor because the second site did not have electricity and Mr. Sietins' work re-

quired him to shoot staples into the shingles and wood. (*See id.* at 36–37). Mr. Ward then informed Builders' Supply of Cape Cod ("Builders' Supply") that Mr. Sietins was authorized to purchase the compressor from it on Maine Post's account. (*See id.* at 40).

Mr. Sietins purchased the compressor and deducted the cost from the amount he billed Maine Post for his work. (*See id.* at 37–38, 40, 54). Mr. Sietins and his crew worked on the second house, and had substantially completed the work, when, on August 21, 2000, Mr. Sietins discovered that Maine Post had hired other workers, not affiliated with Mr. Sietins, to help Mr. Sietins' crew complete the job. (*See id.* at 31–36, 49). Mr. Sietins and Mr. Wallace (the project manager) argued about this, and Mr. Sietins angrily left the site. (*See id.* at 43–45). Before Mr. Sietins left, Mr. Wallace instructed him to leave the compressor behind, but Mr. Sietins refused. (*See id.* at 33, 45).

## The Allegations of Larceny

Later that day, Officer Carpenter was dispatched to the second site to investigate a larceny report. (*See* Carpenter Aff. ¶ 4). Officer Carpenter has been a Falmouth Police Officer since October 1999, and had never met Mr. Sietins. (*Id.* ¶¶ 1, 18). For his part, Mr. Sietins has testified that he has no reason to suspect that Officer Carpenter bears him any ill will. (*See* Sietins Dep. at 63, 80). When Officer Carpenter arrived at the job site, Mr. Wallace approached him and introduced himself as Maine Post's project manager. (*See* Car-

22 of Mr. Sietins' affidavit relating to the alleged relationship between the Police Defendants and the Defaulting Defendants on the grounds that the allegations were conclusory, lacked factual support, and were not based on personal knowledge. In addition, the Police Defendants moved to strike paragraph 19, which asserts that Mr. Sietins "ha[s] proof" of an alleged fact, but fails to provide the proof. The court finds that these objections are meritorious, and the motion to strike is ALLOWED. *See* Fed.R.Civ.P. 56(e); *see also Perez v. Volvo Car Corp.*, 247 F.3d 303, 315–17 (1st Cir.2001).

penter Aff. ¶ 5). Mr. Wallace informed Officer Carpenter that he had discharged Mr. Sietins from the job site that morning due to the quality and untimeliness of his work, and that he had had a dispute with Mr. Sietins because Mr. Sietins had removed the compressor from the job site after Mr. Wallace had instructed him not to. (*See id.* ¶¶ 6–8). Mr. Wallace also told Officer Carpenter that he had confirmed that Maine Post owned the compressor and that Mr. Sietins had not paid for it by conferring with both Mr. Ward and Builders' Supply. (*See id.* ¶ 9). Additionally, Mr. Wallace told Officer Carpenter that Mr. Sietins had disregarded his directive not to take the compressor and had in fact used obscene language towards Mr. Wallace before challenging Mr. Wallace to "have me arrested." (*Id.* ¶ 8).[5] In response to Officer Carpenter's request, Mr. Wallace provided him with invoices indicating that the compressor had been purchased from Builders' Supply by Maine Post. (*See* Carpenter Aff. ¶ 10, and Ex. 1). Mr. Wallace also completed a Civilian Statement Form memorializing his oral report. (*See id.* ¶ 10, and Ex. 4).

After Officer Carpenter compiled all the information from Mr. Wallace, he made several attempts to contact Mr. Sietins via telephone to discuss Maine Post's allegations. (*See id.* ¶ 12). These efforts to locate Mr. Sietins were unsuccessful. (*Id.*) Based on the information Mr. Wallace had provided, Officer Carpenter determined that probable cause existed to seek a criminal complaint for Mr. Sietins' arrest for larceny of property valued at over $250.00. (*See id.* ¶ 11).

Officer Carpenter then reviewed the information with his supervising sergeant, Officer Dunne. (*See id.* ¶ 12). Officer

Dunne has been a Falmouth Police Officer since 1982. (Dunne Aff. ¶ 1). Aside from working on Officer Dunne's house, Mr. Sietins has not had any other interactions with Officer Dunne and has no reason to suspect he bears him any ill will. (*See* Sietins Dep. at 64, 80). Officer Dunne contacted Mr. Ward, who confirmed that the compressor belonged to Maine Post. (*See* Dunne Aff. ¶ 7). Mr. Ward did not notify Officer Dunne of his agreement with Mr. Sietins that Mr. Sietins could keep the compressor and deduct the cost from his bill to Maine Post. (*See id.*). After considering the information Officer Carpenter had accumulated, Officer Dunne agreed with Officer Carpenter's conclusion that probable cause existed to seek Mr. Sietins' arrest. (*See id.* ¶ 8).

Officer Carpenter then prepared a criminal complaint application which he submitted, along with his incident report summarizing his investigation, to Officer Joseph, the Falmouth Police prosecutor who "was responsible for processing complaint and warrant applications in the Falmouth District Court prepared by other police officers." (Joseph Aff. ¶ 2; *see also* Carpenter Aff. ¶ 14, and Ex. 5). Officer Joseph had been a Falmouth Police Officer for twenty six years before retiring in June 2001. (Joseph Aff. ¶ 1). He, too, had never met Mr. Sietins, and Mr. Sietins has no reason to believe that Officer Joseph bears him any ill will. (*See* Sietins Dep. at 80). In his role as a police prosecutor, Officer Joseph's name appears on the complaint as the complainant. His only other involvement is in reviewing the application to confirm that the elements of the crime charged are satisfied based on the content of the application. (*See* Joseph Aff. ¶ 3). The actual determination

---

5.  Mr. Sietins disputes that he challenged Mr. Wallace to have him arrested. (*See* Sietins Dep. at 45). However, he does not dispute that Mr. Wallace so informed Officer Carpenter.

of whether a complaint issues lies within the discretion of the court clerk. (*See* Joseph Aff. ¶ 3).

Officer Carpenter had decided to recommend that an arrest warrant be issued for Mr. Sietins, and that he not simply be summoned to voluntarily appear in court. He made that decision because he had been unable to contact Mr. Sietins, because Mr. Sietins did not live in Falmouth, because Officer Carpenter did not otherwise know Mr. Sietins, and because, according to Mr. Wallace, Mr. Sietins had invited his arrest. As a result, Officer Carpenter concluded that Mr. Sietins would likely not appear in court voluntarily if only a summons issued. (*See* Carpenter Aff. ¶ 15). Officer Joseph processed and filed the application and request for a warrant. (*See* Joseph Aff. ¶ 4). On August 28, 2000, a Clerk Magistrate of the Falmouth District Court issued an arrest warrant for Mr. Sietins, charging him with larceny of property over $250.00 in violation of Mass. Gen. Laws ch. 266, § 30. (*See* Defs.' Statement of Undisputed Facts ¶ 35, Exs. E–F).

The thrust of Mr. Sietins' instant complaint is that the Police Defendants, and, in particular, Officer Dunne, had a close personal relationship with the Defaulting Defendants, and, therefore, sought the complaint and arrest warrant for personal reasons. However, Mr. Sietins has failed to support his allegation that such a close personal relationship exists. Moreover, the undisputed facts establish that the Defaulting Defendants repeatedly confirmed their allegation that Mr. Sietins had stolen the compressor, provided documents (invoices) to support their claim, and even put the charge in a written statement. The record does not factually support the conclusory allegation that, even assuming a close personal relationship existed between all the defendants, the Police Defendants acted in furtherance of the personal relationship as opposed to in response to a repeated, serious complaint.

### *The Arrest*

The Falmouth Police forwarded the arrest warrant to the Sandwich police for execution. The Sandwich police called Mr. Sietins' home the morning of August 29, 2000 and left a message with his wife. (*See* Sietins Dep. at 49). When Mr. Sietins returned home from work at approximately 7:30 p.m. that night, his wife informed him that the police had called and that they had instructed him to go to the Falmouth Courthouse. (*See id.* at 5, 49). A short time later that evening, after Mr. Sietins had eaten dinner and was watching television, three Sandwich Police officers (the "Arresting Officers") knocked on Mr. Sietins' door. (*See id.* at 52). Upon answering the door, the Arresting Officers asked Mr. Sietins his name and if he had a compressor. (*See id.* at 53). After Mr. Sietins told them his name and that he did in fact have a compressor, he informed the Arresting Officers that the compressor was in his truck. (*See id.*). The Arresting Officers did not serve Mr. Sietins with any documents, but told him they were arresting him for stealing the compressor. (*See id.*). Mr. Sietins then showed the Arresting Officers his bill to Maine Post, which showed that he had deducted the cost of the compressor from his bill. (*See id.* at 54). The Arresting Officers told Mr. Sietins they had a warrant for his arrest and handcuffed him. (*See id.* at 53, 70). Mr. Sietins did not resist, and was not injured during the arrest. (*See id.* at 55, 78–79). The arresting officers subsequently removed Mr. Sietins from his home in handcuffs in front of his wife and his teenage son. (*See id.* at 5).

Upon arriving at the Sandwich police station, the Sandwich police *Mirandized*

and fingerprinted Mr. Sietins, then placed him in a holding cell for several hours until his wife arrived. (*See id.* at 59). Other than obtaining the arrest warrant, the Police Defendants did not play any role in Mr. Sietins' arrest. (*See* Carpenter Aff. ¶ 17; *see also* Dunne Aff. ¶ 13; Joseph Aff. ¶ 10).[6]

The next day, Mr. Sietins was arraigned in Falmouth District Court. (*See* Sietins Dep. at 60). The case was continued and Mr. Sietins had to appear in court for a second hearing on a later date. (*See id.* at 65). Mr. Wallace and another Maine Post partner attended the second hearing. (*See id.*). Upon reviewing Mr. Sietins' bill to Maine Post indicating the deduction for the compressor, the presiding judicial officer stated that Maine Post's allegations against Mr. Sietins were not a criminal matter and should be pursued civilly, then dismissed the charges. (*See id.* at 67–68). At the second hearing, Mr. Wallace acknowledged for the first time that Maine Post did in fact have an arrangement with Mr. Sietins allowing Mr. Sietins to purchase the compressor on Maine Post's account and deduct the purchase price from his bill to Maine Post. (*See* Joseph Aff. ¶ 6). Maine Post has not pursued any civil action against Mr. Sietins.

## III. *DISCUSSION*

### A. *Summary Judgment Standard*

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A material fact is one

which has the "potential to affect the outcome of the suit under applicable law." *Sanchez v. Alvarado,* 101 F.3d 223, 227 (1st Cir.1996) (internal citations and quotation omitted). A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, ... would permit a rational fact finder to resolve the issue in favor of either party." *Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990) (internal citations omitted).

To prevail on a motion for summary judgment, "the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Rogers v. Fair,* 902 F.2d 140, 143 (1st Cir.1990). In order to defeat the entry of summary judgment, the nonmoving party must submit "sufficient evidence supporting the claimed factual dispute to require a choice between the parties' differing versions of the truth at trial." *LeBlanc v. Great Am. Ins. Co.,* 6 F.3d 836, 841 (1st Cir.1993), *cert. denied,* 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994) (internal citations and quotations omitted).

### B. *Constitutional Claims*

In Count IV of his Complaint, Mr. Sietins alleges the Police Defendants acted in concert with the Defaulting Defendants to deprive him of his Fourth and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983 and the Massachusetts Civil Rights Act (the "MCRA"), Mass. Gen. Laws ch. 12, §§ 11H and 11I. Specifically, Mr. Sietins contends the false arrest, false statements in the criminal application, and the allegedly extreme excessive force the Arresting Officers used when taking him into custody violated his constitutional rights. These claims are unsupported by the rec-

---

6. Aside from their roles completing the criminal complaint application forms, the Police Defendants have not made any oral or written statements to anyone about Mr. Sietins. (*See* Carpenter Aff. ¶ 18; *see also* Dunne Aff. ¶ 11–12; Joseph Aff. ¶ 9; Sietins Dep. at 71).

ord, and summary judgment shall enter in favor of the Police Defendants on Count IV of the Complaint.

### 1. *42 U.S.C. § 1983*

■ Pursuant to 42 U.S.C. § 1983,

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "A claim under section 1983 has two essential elements. First, the challenged conduct must be attributable to a person acting under color of state law [and] second, the conduct must have worked a denial of rights secured by the Constitution or by federal law." *Soto v. Flores,* 103 F.3d 1056, 1061–1062 (1st Cir. 1997), and cases cited. In the instant case, there is no question that the Police Defendants were acting in their official capacities, *i.e.* were acting under color of state law at all relevant times. The challenged conduct, however, did not deny Mr. Sietins rights secured by law.

### a. *Probable Cause*

Mr. Sietins claims that his arrest was unlawful. While the situation was unfortunate, to say the least, the Police Defendants did not violate Mr. Sietins' constitutional rights.

■ The Fourth Amendment requires arrests be based on probable cause. *See Alexis v. McDonald's Restaurants of Mass., Inc.,* 67 F.3d 341, 349 (1st Cir.1995). If probable cause exists to arrest, then there has not been a constitutional depri-

vation. *See Roche v. John Hancock Mut. Life Ins. Co.,* 81 F.3d 249, 254 (1st Cir. 1996). The probable cause standard is a "relatively low threshold" for police officers to establish. *White v. Town of Marblehead,* 989 F.Supp. 345, 349 (D.Mass. 1997). The probable cause analysis involves "an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time and not [an assessment of] the officer's state of mind at the time the challenged action was taken." *Alexis v. McDonald's,* 67 F.3d at 349 (internal citations and quotations omitted) (alteration in original). "Probable cause will be found if 'the facts and circumstances within [the officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that the [defendant] had committed or was committing an offense.'" *Id.* (quoting *Rivera v. Murphy,* 979 F.2d 259, 263 (1st Cir.1992)) (alteration in original). This assessment depends on "the totality of the circumstances" and "probable cause conclusions may be predicated on information furnished by a credible victim[.]" *White v. Town of Marblehead,* 989 F.Supp. at 351, and cases cited. "If reasonable grounds to arrest exist, probable cause is established and there is no further duty to investigate." *Id.* at 349.

■ The probable cause standard also applies when police are seeking or swearing out a criminal complaint. Thus, if they had probable cause to seek the complaint at the time, such officers are insulated from liability. *See, e.g., Carey v. City of Fall River,* 870 F.2d 40, 40 (1st Cir.1989) (concluding probable cause protected officers who "sought out the criminal complaint"); *Franco-de Jerez v. Burgos,* 876 F.2d 1038, 1040–1041 (1st Cir.1989) (finding existence of probable cause precluded immigration inspector's liability for seek-

ing criminal complaint); *White v. Town of Marblehead*, 989 F.Supp. at 349, 351 (determining victim's statements alone established probable cause for officers to seek criminal complaint).

▆ In the instant case, the uncontroverted evidence establishes that the Police Defendants had probable cause to seek Mr. Sietins' arrest for larceny. Officer Carpenter reasonably relied on Mr. Wallace's verbal and written reports that Mr. Sietins had wrongfully taken the compressor from the job site. Further, Mr. Wallace informed Officer Carpenter that he had confirmed Maine Post's ownership of the compressor with both Mr. Ward and Builders' Supply, and Officer Dunne confirmed this with Mr. Ward himself. Mr. Wallace also provided Officer Carpenter with invoices which appeared to establish that Maine Post owned the compressor. Officer Carpenter attempted to contact Mr. Sietins several times to obtain his side of the story, and when he could not do so he reasonably relied on the alleged victim's statement. *See White v. Marblehead*, 989 F.Supp. at 351. In short, the information available to the Police Defendants was sufficient to warrant a prudent person to believe that Mr. Sietens had committed the offense of larceny. Thus, Mr. Sietins was not deprived of his constitutional rights based on an unlawful arrest.

#### b. *Excessive Force*

Next, Mr. Sietins alleges that the excessive force used during his arrest violated his constitutional rights. However, the record does not support this contention.

▆ Excessive force claims arising out of arrests are analyzed under the Fourth Amendment's proscription of "unreasonable searches and seizures." *Bastien v. Goddard*, 279 F.3d 10, 14 (1st Cir.2002). To prevail on such a claim, a plaintiff must establish "that the police defendant's actions were not objectively reasonable, viewed in light of the facts and circumstances confronting him and without regard to his underlying intent or motivation." *Id.* (internal citation omitted). The relevant circumstances include "(1) 'the severity of the crime at issue;' (2) 'whether the suspect poses an immediate threat to the safety of the officers or others;' and (3) 'whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight.'" *Alexis v. McDonald's*, 67 F.3d at 352–353 (quoting *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989)) (alteration in original). However, the inquiry must consider "the totality of the circumstances" from the officer's perspective at the time of the incident, not "with the 20/20 vision of hindsight." *Alexis v. McDonald's*, 67 F.3d at 352 (internal citation and quotation omitted).

▆ It is axiomatic that if the Arresting Officers did not use excessive force when arresting Mr. Sietins, then the Police Defendants, who were not present on the scene, cannot be liable for impermissible excessive force.[7] The record in the instant case is devoid of any evidence of excessive force. The only physical contact Mr. Sietins alleges occurred during the incident was when the Arresting Officers handcuffed him. There was "no physical resistance or wrestling of any type." (Sietins Dep. at 78). Mr. Sietins admits that the arresting officers did no more than handcuff him, and used no more force than

---

7. Because the court finds the Arresting Officers did not use excessive force during Mr. Sietins' arrest, under the facts presented in this case there is no need to address whether the Police Defendants, who were not present on the scene, could be held liable for force used by other officers on the scene.

necessary to accomplish that goal. (*See id.* at 55, 78–79). Therefore, Mr. Sietins has failed to present a trialworthy excessive force claim.

Mr. Sietins' principle claim seems to be that there was no need to arrest him at all, and that a summons should have issued giving him the opportunity to voluntarily appear in court. For the reasons detailed above, Officer Carpenter concluded that Mr. Sietins would not appear voluntarily, a conclusion that is not so obviously wrong as to support a finding of a constitutional violation. That the "police chose to arrest via a warrant, while unfortunate under the circumstances, is not actionable under the legal theories presented." *White v. Town of Marblehead,* 989 F.Supp. at 348, n. 1.

### c. *False Statements*

Finally, Mr. Sietins contends the Police Defendants made false statements in the criminal complaint application to the effect that Mr. Sietins had to be arrested and handcuffed in his home because he was not reliable to appear in court, and that these statements amounted to a constitutional violation. The record does not support this claim.

■ Assuming, *arguendo,* false statements in a criminal complaint application could form the basis for a section 1983 claim, there is no evidence of such false statements in the instant case. The only statements any of the Police Defendants made in seeking Mr. Sietins' arrest war-

rant were contained in the complaint application, the request for warrant issuance, and the incident report, all of which the officers submitted to the Falmouth District Court. A neutral Clerk Magistrate then issued the arrest warrant after independently reviewing these documents. Any false information in these documents was the result of the Defaulting Defendants' misrepresentations, not known contrivances by the Police Defendants. For the reasons detailed above, the Police Defendants were entitled to rely on the information provided to them by the putative victims of the alleged larceny. For all these reasons, summary judgment shall enter in favor of the Police Defendants on Mr. Sietins' claim under 42 U.S.C. § 1983.

### 2. *The MCRA* [8]

■ In Count IV, Mr. Sietins further alleges that the defendants have violated the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, §§ 11H and 11I ("MCRA").[9] To prevail under the MCRA, "plaintiffs must prove that (1) their exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth, (2) have been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by 'threats, intimidation or coercion.'" *Swanset Dev. Corp. v. City of Taunton,* 423 Mass. 390, 395, 668 N.E.2d 333, 337 (1996). The MCRA is "coextensive with 42 U.S.C. § 1983, except that the Federal

---

**8.** Although the court has dismissed Mr. Sietins' section 1983 claim, which formed the basis for the court's subject matter jurisdiction, "[i]n a federal-question case, the termination of the foundational federal claim does not divest the district court of power to exercise supplemental jurisdiction but, rather, sets the stage for an exercise of the court's informed discretion." *Roche v. John Hancock,* 81 F.3d at 256. Exercising this discretion, the court finds that deciding the pendent state

law claims serves the important functions of judicial economy, convenience, and fairness and therefore retains jurisdiction over these claims.

**9.** Mass. Gen. Laws ch. 12, § 11I provides for a private cause of action for violations of § 11H. *See Batchelder v. Allied Stores Corp.,* 393 Mass. 819, 820 n. 2, 473 N.E.2d 1128, 1130 n. 2 (1985).

statute requires State action whereas its State counterpart does not," *Bell v. Mazza,* 394 Mass. 176, 181, 474 N.E.2d 1111, 1114 (1985) (internal citations and quotation omitted), and "the derogation of secured rights must occur by threats, intimidation or coercion." *Bally v. Northeastern Univ.,* 403 Mass. 713, 718, 532 N.E.2d 49, 52 (1989) (internal citation omitted). "A direct violation of civil rights is not, without a showing of coercive behavior, actionable." *Britton v. Maloney,* 901 F.Supp. 444, 453 (D.Mass.1995); *accord Longval v. Comm'r of Correction,* 404 Mass. 325, 333, 535 N.E.2d 588, 593 (1989). However "[a]rrest and detention is 'intrinsically coercive' for MCRA purposes." *Scott v. Macy's East, Inc.,* No. CIV. A. 01–10323–NG, 2002 WL 31439745, at *10 (D.Mass. Oct. 31, 2002) (citing *Sarvis v. Boston Safe Deposit and Trust Co.,* 47 Mass.App.Ct. 86, 92–93, 711 N.E.2d 911, 918 (1999)).

▪ For the reasons detailed above in connection with his claim under 42 U.S.C. § 1983, Mr. Sietins has failed to establish a violation of his rights. "Having failed to establish that the [Police] Defendants' coercion accomplished, contributed to or was directed at any unlawful end, the MCRA claims cannot stand." *Scott v. Macy's East, Inc.,* 2002 WL 31439745, at *10. Therefore, summary judgment shall enter in favor of the Police Defendants on Count IV of the Complaint.[10]

### C. *Defamation*

In Count I of his Complaint, Mr. Sietins contends the Police Defendants defamed him by falsely accusing him of committing the crime of larceny. The Police Defen-

dants argue that since the only statements they made about Mr. Sietins were made while pursuing a criminal complaint, the statements are privileged. This court agrees.

▪ "Defamation encompasses the torts of libel and slander—the one being in general written while the other in general is oral." *Draghetti v. Chmielewski,* 416 Mass. 808, 813 n. 4, 626 N.E.2d 862, 867 n. 4 (1994). "The elements of a defamation claim include (1) a false and defamatory communication (2) of and concerning the plaintiff which is (3) published or shown to a third party." *Dorn v. Astra USA,* 975 F.Supp. 388, 396 (D.Mass.1997). "Charges of crime are slanderous and actionable per se without proof of special damage." *Bander v. Metro. Life Ins. Co.,* 313 Mass. 337, 341, 47 N.E.2d 595, 598 (1943); *accord Ball v. Wal–Mart, Inc.,* 102 F.Supp.2d 44, 49 (D.Mass.2000), and cases cited.

▪ However, it is well settled that statements made in the course of judicial proceedings which pertain to those proceedings are absolutely privileged and cannot form the basis for a defamation claim, even if uttered with malice or in bad faith. *See, e.g., Correllas v. Viveiros,* 410 Mass. 314, 319, 572 N.E.2d 7, 10 (1991). Similarly, an application for a criminal complaint is generally considered as involving "a form of judicial proceeding and the statements made therein are absolutely privileged." *Id.* at 321–22, 572 N.E.2d at 12 (citing *Kipp v. Kueker,* 7 Mass.App.Ct. 206, 211–12, 386 N.E.2d 1282 (1979)). *See also O'Connell v. Bank of Boston,* 37 Mass.App. Ct. 416, 421, 640 N.E.2d 513, 517 (1994) (determining employer's statement initiat-

---

10. Although the Police Defendants raise qualified immunity as an alternative affirmative defense, the court does not reach this issue because it finds Mr. Sietins has not amassed sufficient evidence of a constitutional deprivation. *See, e.g., Santiago v. Fenton,* 891 F.2d 373, 383 (1st Cir.1989) (stating proper sequence of analysis in cases involving qualified immunity is to first determine if there has been a constitutional deprivation before considering qualified immunity).

ing criminal charges was absolutely privileged), *review denied,* 419 Mass. 1104, 646 N.E.2d 409 (1995). Since the only statements made by the Police Defendants were in the context of seeking a criminal complaint, these statements are privileged. Therefore, the Police Defendants' motion for summary judgment as to Count I of the Complaint is allowed.[11]

### D. *Intentional Infliction of Emotional Distress*

In Count II of his Complaint, Mr. Sietins contends the Police Defendants are liable for intentional infliction of emotional distress because they falsely accused him of a crime; deliberately misstated on the criminal complaint application that he was too unreliable to appear in court without being arrested; and had him arrested in front of his wife, child, and neighbors. However, the undisputed facts establish that the Police Defendants are entitled to summary judgment on this count as well.

In order to prevail on his claim of intentional infliction of emotional distress, a plaintiff must prove "(1) that the defendant intended to cause, or should have known that his conduct would cause, emotional distress; (2) that the defendant's conduct was extreme and outrageous; (3) that the defendant's conduct caused the plaintiff's distress; and (4) that the plaintiff suffered severe distress. To be considered extreme and outrageous, the defendant's conduct must be beyond all bounds of decency and ... utterly intolerable in a civilized community. Liability cannot be founded upon mere insults, threats, or annoyances." *Howcroft v. City of Peabody,* 51 Mass.App.Ct. 573, 596, 747 N.E.2d 729, 747 (2001) (quoting *Cady v. Marcella,* 49 Mass.App.Ct. 334, 340–341, 729 N.E.2d 1125, 1131 (2000) (internal citation and quotation omitted), *review denied,* 432 Mass. 1107, 737 N.E.2d 467 (2000)).

In this case, the record indicates that the Police Defendants merely carried out their obligations as law enforcement officials and their conduct "as a matter of law cannot be deemed extreme and outrageous. Neither applying for an arrest warrant, nor making an arrest pursuant to an issued warrant can be considered 'utterly intolerable in a civilized community.'" *Sena v. Commonwealth,* 417 Mass. 250, 264, 629 N.E.2d 986, 994 (1994) (quoting *Agis v. Howard Johnson Co.,* 371 Mass. 140, 145, 355 N.E.2d 315, 319 (1976)). Therefore, summary judgment shall enter in favor of the Police Defendants on Count II of the Complaint.

### E. *Malicious Abuse of Process*

Mr. Sietins alleges in Count III of his Complaint that the Police Defendants are liable for malicious abuse of process. As the undisputed facts do not support a finding of an ulterior purpose on the part of the Police Defendants, summary judgment

---

**11.** In some circumstances, statements made in connection with a police investigation are considered to be subject to a qualified privilege, which may be lost if the privilege is abused. *See, e.g., Scott v. Macy's East,* 2002 WL 31439745, at *13–14 (stating in dicta "a qualified privilege attaches to defamatory statements made to police about third parties for criminal investigations" which may be lost if "statements were made with knowledge of their falsity or reckless disregard for the truth"); *Galvin v. New York, N.H. & H.R. Co.,* 341 Mass. 293, 296, 168 N.E.2d 262, 265 (1960) (finding qualified privilege where employer initiated criminal proceedings not previously contemplated by police, and that privilege was abused by untoward and repeated accusations made before a growing crowd). In the instant case, there is no evidence of any abuse of a privilege, and therefore summary judgment is warranted regardless whether the applicable privilege is deemed absolute or qualified.

shall enter in their favor on this Count as well.

■ "The essential elements of the tort of abuse of process are (1) process was used; (2) for an ulterior or illegitimate purpose; (3) resulting in damage." *Vittands v. Sudduth,* 49 Mass.App.Ct. 401, 406, 730 N.E.2d 325, 332 (2000) (internal citations and quotations omitted). "The essence of this tort is the malicious use of legal process 'to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed.' " *Carroll v. Gillespie,* 14 Mass. App.Ct. 12, 26, 436 N.E.2d 431, 439 (1982) (internal citations omitted).

■ For the reasons detailed above in connection with the court's conclusion that the Police Defendants did not violate Mr. Sietins' constitutional rights, the record does not support a conclusion that the Police Defendants acted with an "ulterior purpose." Consequently, summary judgment will be entered in their favor on the abuse of process claim.

### F. *Assault & Battery*

In Count V of his Complaint, Mr. Sietins contends that the Police Defendants are liable for assault and battery arising out of his arrest by the Sandwich Police. Because, as detailed above, the Arresting Officers did not use excessive force, this claim must fail and summary judgment shall be entered in favor of the Police Defendants on Count V.

■ Assault and battery is the "intentional and unjustified use of force upon the person of another, however slight, or the intentional doing of a wanton or grossly negligent act causing personal injury to another." *Jesionowski v. Beck,* 937 F.Supp. 95, 105 (D.Mass.1996); *accord*

*Noel v. Town of Plymouth,* 895 F.Supp. 346, 354 (D.Mass.1995) (both quoting *Commonwealth v. McCan,* 277 Mass. 199, 203, 178 N.E. 633, 634 (1931)). "[A]n officer authorized to make an arrest may use such force as is reasonably necessary to effect the arrest[.]" *Julian v. Randazzo,* 380 Mass. 391, 396, 403 N.E.2d 931, 934 (1980); *accord Dean v. City of Worcester,* 924 F.2d 364, 369 (1st Cir.1991) (internal citation and quotation omitted); *Noel v. Town of Plymouth,* 895 F.Supp. at 354 (internal citation and quotation omitted). The standard for determining whether force is reasonable for assault and battery claims is "essentially the same" as the standard for determining if force is reasonable for Fourth Amendment excessive force claims. *Dean v. City of Worcester,* 924 F.2d at 369; *accord Noel v. Town of Plymouth,* 895 F.Supp. at 354; *Jesionowski v. Beck,* 937 F.Supp. at 105. Thus, when a plaintiff alleges both a Fourth Amendment excessive force claim and an assault and battery claim in the same complaint, the constitutional claim and the common law claim "rise or fall in the same manner[.]" *Id.*

■ For the reasons detailed above, the record does not support a finding that the Police Defendants used excessive force. The "identical reasoning" requires the conclusion that Mr. Sietins common law claim of assault and battery must fail. *Dean v. City of Worcester,* 924 F.2d at 369.

### G. *False Imprisonment*

Finally, in Count VI, Mr. Sietins contends the Police Defendants are liable for false imprisonment because they sought a warrant for his arrest as opposed to a summons. Because the Police Defendants had probable cause for the arrest, this claim must fail and summary judgment shall be entered in favor of the Police

Defendants on this Count as well.[12]

 False imprisonment consists of "(1) intentional and (2) unjustified (3) confinement of a person, (4) directly or indirectly (5) of which the person confined is conscious or is harmed by such confinement." *Ball v. Wal–Mart,* 102 F.Supp.2d at 55 (quoting *Noel v. Town of Plymouth,* 895 F.Supp. at 354). Police officers may be liable for this tort "unless the police officer had a legal justification" for the restraint. *Rose v. Town of Concord,* 971 F.Supp. 47, 51 (D.Mass.1997) (citing *Wax v. McGrath,* 255 Mass. 340, 342, 151 N.E. 317, 318 (1926)). Such justification exists if the officer had probable cause to arrest the suspect. *See Rose v. Town of Concord,* 971 F.Supp. at 51–52 (dismissing false imprisonment claim against police where officers reasonably believed plaintiff had committed a felony).

For the reasons detailed above, the Police Defendants had probable cause to arrest Mr. Sietins. Consequently, his claim of false imprisonment must fail.

## IV.  CONCLUSION

For the reasons detailed herein, the Police Defendants' "Motion for Summary Judgment" (Docket # 28) is ALLOWED.

---

**12.**  The Police Defendants claim that they are immune from prosecution for this count under Mass. Gen. Laws ch. 263, § 3. However, since the allegation is that they ordered, directed or initiated the arrest, that statute offers them no protection. Similarly, the Police Defendants' reliance on Mass. Gen. Laws ch. 231, § 94A is misplaced as that statute does not apply to felony charges such as the one made here.