**Thomas STEFANIK, Plaintiff**

v.

**Steven RENO, et al, Defendants.**

**No. C.A. 06–30049–MAP.**

United States District Court,
D. Massachusetts.

March 13, 2008.

Thomas Stefanik, Huntington, MA, pro se.

Dan Vernon Bair, II, Lisa Brodeur–McGan, Brodeur–McGan, P.C., Springfield, MA, Shawn M. Willis, City of Holyoke Law Department, Holyoke, MA, for Defendants.

### MEMORANDUM AND ORDER RE: REPORT AND RECOMMENDATION WITH REGARD TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

PONSOR, District Judge.

This is an action asserting (among other things) civil rights violations against three individual Defendants, all employed by the City of Holyoke. On April 3, 2007, Defendants filed a Motion for Summary Judgment (Dkt. No. 26) and on September 13, 2007, Chief Magistrate Judge Kenneth P. Neiman issued his Report and Recommendation, to the effect that the motion should be allowed.

Objections to the Report and Recommendation were due within ten days, but on September 20, 2007 Plaintiff filed for an extension of ninety days. On September 23, 2007, the court allowed the motion, specifying December 31, 2007 as the deadline for filing.

On December 31, 2007, instead of filing his objections, Plaintiff asked for an additional sixty days. On January 2, 2008, the court gave Plaintiff the full period requested, up to February 29, 2008, and stated explicitly that there would be no further extensions.

Despite the court's admonition that no further extensions would be permitted, Plaintiff on the very last day of the extension, February 29, 2008, filed a further motion to extend. This motion has been denied by marginal notation.

Having reviewed the substance of the Report and Recommendation, the court, upon *de novo* review, will hereby adopt the Report and Recommendation and allow Defendants' Motion for Summary Judgment, for two reasons.

First, despite two very generous extensions, Plaintiff has failed to file any timely objection to the Report and Recommendation. This alone justifies adoption of the Report and Recommendation.

Second, the Report and Recommendation is detailed and meritorious. Plaintiff's complaint raises no bonafide constitutional claims, defendants would enjoy qualified immunity even if such constitutional claims were offered, and Plaintiff's state law and common law claims lack any arguable legal or factual basis.

Based on the foregoing, the Report and Recommendation (Dkt. No. 36) is hereby ADOPTED and Defendants' Motion for Summary Judgment (Dkt. No. 26) is hereby ALLOWED. The clerk is ordered to enter judgment for Defendants. This case may now be closed.

It is So Ordered.

*REPORT AND RECOMMENDATION WITH REGARD TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Document No. 26)*

NEIMAN, United States Chief Magistrate Judge.

Thomas Stefanik ("Plaintiff") brings this fifteen count complaint against Steven Reno ("Reno"), Gary Gresh ("Gresh") and Alan Fletcher ("Fletcher") (together "Defendants"), all of whom are employed in some capacity by the City of Holyoke. Defendants' motion for summary judgment on all of Plaintiff's claims has been referred to this court for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B). For the following reasons, the court will recommend that Defendants' motion be allowed.

## I. STANDARD OF REVIEW

When ruling on a motion for summary judgment, the court must construe the facts in a light most favorable to the non-moving party. *Benoit v. Tech. Mfg. Corp.*, 331 F.3d 166, 173 (1st Cir.2003). Summary judgment is appropriate when "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" when the evidence is such that a reasonable factfinder could resolve the point in favor of the non-moving party, and a fact is "material" when it might affect the outcome of the suit under the applicable law. *Morris v. Gov't Dev. Bank*, 27 F.3d 746, 748 (1st Cir.1994). The non-moving party bears the burden of placing at least one material fact into dispute after the moving party shows the absence of any disputed material fact. *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir.1994) (discussing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

## II. BACKGROUND

The following facts are stated in a light most favorable to Plaintiff, the nonmoving party. *See Uncle Henry's, Inc. v. Plaut Consulting Co.*, 399 F.3d 33, 41 (1st Cir. 2005). For the most part, however, the facts are taken from the undisputed facts set forth in Defendants' memorandum in support of their motion (Document No. 26).[1]

At all times relevant to this action, Gresh was a police officer, Fletcher was a police captain, and Reno was the Building Commissioner for the City of Holyoke. *(Id.* ¶¶ 2–4.) Plaintiff is corporate secretary of S & B Miller Realty, Inc. ("S &

---

1. Additional facts which Plaintiff raises in his opposition to Defendants' motion, *e.g.,* holding-cell conditions at the Holyoke Police Department, have no bearing on the issues before the court.

B"), an entity that purchases and sells real estate. *(Id.* ¶¶ 1, 6.)

Until 1996, S & B owned residential property located at 123 Pine Street in Holyoke ("123 Pine Street"). *(Id.* ¶ 7.) Plaintiff himself did not own 123 Pine Street nor did he spend any of his own money to modify the property. *(Id.* ¶ 59.) In 1996, the City of Holyoke placed 123 Pine Street in tax title because of S & B's failure to pay property taxes. *(Id.* ¶ 8.) Plaintiff contends that "at all times . . . since 1/1/96" he was a "tenant at 123 Pine Street." (See Plaintiff's Motion to Supplement his Memorandum of Law (Document No. 35).)

On or about March 18, 2005, Reno, acting in his capacity as Building Commissioner, issued Plaintiff a "Stop Work" Order, citing violations of the State Building Code with respect to 123 Pine Street. *(Id.* ¶¶ 9, 10.) Despite the Order, Plaintiff continued to work at the site. *(Id.* ¶ 11.) Soon thereafter, on or about April 14, 2005, the City of Holyoke requested a probable cause hearing in Housing Court directed at Plaintiff for continuing to perform work on the building. *(Id.* ¶ 12). On June 28, 2005, following a hearing, Judge William H. Abrashkin entered another Order which stated, in applicable part, as follows:

1. The defendant, Thomas Stefanik, is prohibited from doing any work of any description, in or at the premises located at 123 Pine Street, Holyoke, at anytime or for any reason.

2. All work performed at the premises must be done by applying for, and receiving the appropriate permits, and completed by licensed individuals only.

*(Id.* ¶ 14.)

On August 31, 2005, Plaintiff and June Massee ("Massee"), corporate president of

S & B, were standing on the sidewalk at 123 Pine Street discussing the renovation of the building. *(Id.* ¶¶ 5, 18.) (As noted below, Plaintiff argues, without substantiation, that he and Massee were discussing other things as well.) Between 2:00 and 2:30 p.m., when a dumpster was delivered to the back of the property to remove refuse, Plaintiff left the sidewalk and went onto the premises. *(Id.* ¶ 19.) It is undisputed that Plaintiff intended to have volunteers remove debris from the premises in the coming days. *(Id.* ¶ 20.)

Returning to the sidewalk, Plaintiff, together with Massee, was reading a report from LLC Engineering Consultants when Reno and Gresh, with another unidentified police officer, approached them. *(Id.* ¶ 21.) Reno handed a copy of Judge Abrashkin's June 28, 2005 Order to the police officers. *(Id.* ¶ 22.) Gresh read the Order and relayed its contents to Plaintiff. *(Id.* ¶ 23.) Both Reno and Gresh stated that the Order meant that Plaintiff could not be on or near the 123 Pine Street property, including the sidewalk. *(Id.* ¶ 24.) Gresh told Plaintiff that "if [he] didn't remove [himself] from where [he] was on the premises and leave immediately, [he] would be arrested." *(Id.* ¶ 25.) Reno also told Plaintiff that "[y]ou have a Court Order not to be on the premises." *(Id.* ¶ 26.) Reno then told Plaintiff to "get off the property and leave or I will have you arrested." *(Id.)* Gresh then told Plaintiff "you can't be on the property, can't be near the property. Remove yourself at once or you will be arrested." *(Id.* ¶ 28.) In addition, Gresh rubbed his chest against Plaintiff's chest, causing Plaintiff to urinate in his pants and later vomit. *(Id.* ¶ 29.) There was no physical contact between Plaintiff and Reno. *(Id.* ¶ 27.)[2]

---

**2.** Prior to August 31, 2005, Plaintiff knew Reno in his professional capacity and

"thought he was kind of a nice guy." *(Id.*

Soon after this encounter, Plaintiff left the area, went to the Holyoke Police Department and asked for Fletcher, a police captain. *(Id.* ¶ 30.) Fletcher came to the lobby and stated, "yes, I know about the incident and I'm directing you to not be-to not go back to the property or else you will be arrested." *(Id.* ¶ 31.) Fletcher told Plaintiff that, if he had issues interpreting the June 28, 2005 Order or amending it, he should address those questions to the Housing Court the next day because Reno would be there. *(Id.)*

There is no indication that Plaintiff went to the Housing Court the next day, September 1, 2005. He was, however, again on the sidewalk in front of 123 Pine Street, this time at approximately 10:00 a.m. *(Id.* ¶ 37.) Accompanying Plaintiff was Steve Morris, who had been hired by S & B at the direction of Plaintiff to conduct work at the premises. *(Id.* ¶ 38.) When Gresh later arrived, Morris was on the porch taking measurements of the building's window frames. *(Id.* ¶¶ 39, 40.) Gresh told Morris that he should not be on the premises or he risked arrest. *(Id.* ¶ 41.) Morris explained why he was on the property, and Gresh replied: "There is a Court Order. Nobody can be doing work on the premises and that is that." *(Id.* ¶ 42.) Morris left the area. *(Id.)*

Then, Gresh, referring to the June 28, 2005 Order, threatened Plaintiff with arrest and said, "[y]ou can't be on the property, you can't be near the location of your property." *(Id.* ¶ 43.) Gresh again touched his chest to Plaintiff's chest. *(Id.* ¶ 44.) Plaintiff too left the area. *(Id.)*

On September 13, 2005, Plaintiff stated in a "Presentment of Claim Notice" sent to the City of Holyoke that Gresh, Fletcher and Reno failed to understand Judge Abrashkin's June 28, 2005 Order. *(Id.*

¶ 52.) Plaintiff claimed that the Order "states for me not to work at 123 Pine St, Holyoke, but the order does not say I can't occupy or reside at 123 Pine St, Holyoke." *(Id.)*

After further hearing on September 19, 2005, Plaintiff—via yet another Housing Court Order, this one dated September 21, 2005—was prohibited from entering the premises for any reason. *(Id.* ¶ 54.) In issuing this order, Judge Abrashkin determined that Plaintiff had "violated the terms outlined in [an] agreement of the parties signed and dated September 7, 2005," indicated that "a finding of contempt [was] to enter," and noted that if Plaintiff "fail[ed] to comply with the terms of this order he will be subject to incarceration." *(Id.,* Ex. 13.)

On or about January 4, 2007, the City of Holyoke brought a foreclosure proceeding against S & B in Land Court and received final judgment. *(Id.* ¶ 55.) In addition, it is undisputed that Plaintiff was arrested on or about January 9, 2007, for trespass, larceny from a building and larceny over $250 for incidents unrelated to the instant action. *(Id.* ¶ 56.) Plaintiff's motion to dismiss those state charges was recently allowed by the Holyoke District Court. (See Exhibit to Document No. 35 (Aug. 9, 2007 Mem. & Order of Kenneth H. Cote, J.).)

### III. DISCUSSION

Plaintiff pursues essentially three causes of action against Defendants. First, Plaintiff asserts constitutional claims under both the Massachusetts Civil Rights Act ("MCRA"), Mass. Gen. L. ch. 12, §§ 11H, 11I, and the United States Constitution via 42 U.S.C. § 1983 ("section 1983") for violations of his right to associate and the deprivation of certain property rights. Second, Plaintiff alleges intentional inflic-

¶ 15.) Plaintiff had no personal contact with Gresh before August 31, 2005. *(Id.* ¶ 16.)

tion of emotional distress. Third, Plaintiff alleges abuse of process. In the end, Plaintiff seeks compensatory and punitive damages.

For the reasons which follow, the court finds that Plaintiff's constitutional claims fall woefully short and that, in any event, Defendants are protected by qualified immunity. In addition, the court believes that supplemental jurisdiction over Plaintiff's state law causes of action should be exercised and that summary judgment in Defendants' favor be entered on those claims as well.

### A. Constitutional Claims

Plaintiff alleges two specific violations of his constitutional rights. First, Plaintiff asserts that the incident on August 31, 2005, in which he was threatened with arrest while on the sidewalk in front of 123 Pine Street, violates his "right to associate" under the First Amendment. Second, Plaintiff contends that Defendants unlawfully deprived him of "property rights" when they prohibited him from entering 123 Pine Street.

 To establish liability under section 1983, "plaintiffs must show by a preponderance of the evidence that: (1) the challenged conduct was attributable to a person acting under color of state law; and (2) the conduct deprived the plaintiff of rights secured by the Constitution or laws of the United States." *Velez–Rivera v. Agosto–Alicea*, 437 F.3d 145, 151–52 (1st Cir.2006). Similarly, "[t]he MCRA provides a cause of action for any person whose rights under the Constitution, federal law, or state law have been interfered with by threats, intimidation, or coercion of another." *Kelley v. LaForce*, 288 F.3d 1, 10 (1st Cir.2002). Massachusetts courts have interpreted the MCRA to be co-extensive with section 1983 with "two disparities: (1) the MCRA does not require any

state action (*i.e.*, there is no 'under color of state law' requirement), and (2) a claim under the MCRA requires a violation by threats, intimidation, or coercion." *Id.* Nonetheless, the same standard for qualified immunity, which Defendants raise as a defense to Plaintiff's claims, applies to both MCRA and section 1983 claims. *See id.*

 "Government officials performing discretionary functions generally are granted a qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Wilson v. Layne*, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (internal citations omitted). According to the First Circuit, courts generally employ a three-pronged test to determine whether qualified immunity applies. *See Jennings v. Jones*, 499 F.3d 2, 10–11 (1st Cir.2007) *(en banc)*. In particular, the court must inquire:

(1) whether the claimant has alleged the deprivation of an actual constitutional right; (2) whether the right was clearly established at the time of the alleged action or inaction; and (3) if both of these questions are answered in the affirmative, whether an objectively reasonable official would have believed that the action taken violated that clearly established constitutional right.

*Id.* (citations and quotation marks omitted). Here, with respect to the first prong, it is undisputed that Plaintiff has alleged deprivations of constitutional rights, at least in the most general sense.

 With respect to the second prong, the court must determine "whether the constitutional right was clearly established at the time of the incident such that it would be clear to a reasonable officer that

his conduct was unlawful in the situation he confronted." *Id.,* at 15–16 (citations and internal quotations omitted). In doing so, the court must "consider whether existing case law gave the defendants fair warning that their conduct violated the plaintiff's constitutional rights." *Id.* (citation and internal quotations omitted). "[T]he law is clearly established," the First Circuit explains, "either if courts have previously ruled that materially similar conduct was unconstitutional, or if 'a general constitutional rule already identified in the decisional law [applies] with obvious clarity to the specific conduct' at issue." *Id.* (quoting *United States v. Lanier,* 520 U.S. 259, 271, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997)).

With respect to the case at bar, therefore, the court must consider whether materially similar cases or general constitutional principles gave Defendants fair warning that it was unconstitutional for them, while armed with a court order, to threaten Plaintiff with arrest for standing on the sidewalk of 123 Pine Street. For the reasons which follow, Defendants, in the court's opinion, were on no such notice.

As for Plaintiff's first constitutional claim, the First Amendment does not explicitly protect a "right to associate," although the Supreme Court has recognized the right in two circumstances. *City of Dallas v. Stanglin,* 490 U.S. 19, 24, 109 S.Ct. 1591, 104 L.Ed.2d 18 (1989). First, freedom of association is recognized for purposes of "intimate human relationships." *Id.* The types of relationships deserving constitutional protection can include marriage, the raising and education of children, and cohabitation with one's relatives. *See Roberts v. United States Jaycees,* 468 U.S. 609, 618, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984). Second, the right to associate applies to those activities traditionally protected by the First Amend-ment, such as speech, assembly, petition for the redress of grievances, and the exercise of religion. *Stanglin,* 490 U.S. at 24, 109 S.Ct. 1591. This type of association is referred to as "expressive association." *Id.*

 That said, the government may engage in some conduct that "might make it more difficult for individuals to exercise their freedom of association, [but] this consequence does not, without more, result in violation of the First Amendment." *Fighting Finest, Inc. v. Bratton,* 95 F.3d 224, 228 (2d Cir.1996). "To be cognizable, the interference with associational rights must be 'direct and substantial' or 'significant.'" *Id.* (quoting *Lyng v. UAW,* 485 U.S. 360, 367 & n. 5, 108 S.Ct. 1184, 99 L.Ed.2d 380 (1988), and also citing *Younger v. Harris,* 401 U.S. 37, 51, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)).

In the case at bar, Defendants' conduct does not fall within the rubric of freedom of association. Nothing in the record before the court suggests that Plaintiff, while on the sidewalk in front of 123 Pine Street and before Defendants forced him to leave, was talking about anything other than the renovation of the property. This is simply insufficient for Plaintiff's constitutional claim. *See Wine & Spirits Retailers, Inc. v. Rhode Island,* 418 F.3d 36, 50 (1st Cir. 2005) ("an association's expressive purpose may pertain to a wide array of ends (including economic ends), ... but the embedded associational right ... does not cover concerted action that lacks an expressive purpose") (citing *Stanglin,* 490 U.S. at 24–25, 109 S.Ct. 1591).

To be sure, in response to Defendants' motion, Plaintiff avers that his rights were violated because he and Massee were also discussing their plans for marriage while on the sidewalk that day, a discussion amounting to intimate human relations. Plaintiff claims as well that they were talk-

ing about a matter of public concern, namely, offering free housing to Hurricane Katrina victims at 123 Pine Street. Yet even were the court to accept these unsubstantiated assertions as fact, Plaintiff points to no supporting case-law suggesting that even remotely similar conversations fall within the expressive purposes of the right to associate. In other words, the court believes that it is clear beyond peradventure of doubt that, for qualified immunity purposes, Defendants' conduct did not constitute a violation of any clearly established constitutional right.

▆ Even were the court to assume, for present purposes, that Plaintiff could satisfy the second prong of the qualified immunity analysis with respect to his association claim, Defendants' conduct was nevertheless reasonable in light of the Housing Court Order upon which they based their actions. As indicated, the June 28, 2005 Order categorically prohibited Plaintiff from "doing any work of any description, in or at the premises located at 123 Pine Street, Holyoke at anytime or for any reason," and there is more than ample evidence that Plaintiff was violating that mandate. For one thing, Plaintiff was on the premises on August 31, 2005, to oversee a dumpster hauling refuse from the property, a type of "work" no doubt contemplated by the Order. In addition, Plaintiff admitted that he intended to have volunteers remove refuse from the premises. Further, after being unambiguously warned by Defendants about the Order's directive, Plaintiff hired a contractor the very next day to perform work on the premises without first obtaining the required permit. Plaintiff's transparent attempt to sidestep the requirements of the Order by directing or overseeing work from the sidewalk, rather than on the property itself, gave no cause for Defendants to act in any other manner. In short, Defendants, relying on the Order, were reasonable in asking Plaintiff to vacate the property and their so-called "interference" with Plaintiff was hardly "direct and substantial or significant." *Fighting Finest*, 95 F.3d at 225.

▆ Plaintiff's second constitutional argument—that Defendants illegally deprived him of "property rights" by unduly restricting him from access to and use of 123 Pine Street—lacks merit as well. "To establish a procedural due process claim under section 1983, a plaintiff 'must allege first that it has a property interest as defined by state law and, second, that the defendants, acting under color of state law, deprived it of that property interest without constitutionally adequate process.'" *Mongeau v. City of Marlborough*, 462 F.Supp.2d 144, 149–50 (D.Mass.2006) (quoting *SFW Arecibo, Ltd. v. Rodriguez*, 415 F.3d 135, 139 (1st Cir.2005)). Plaintiff, in the court's opinion, can barely prove the first prong and certainly not the second.

▆ As to the first prong, Plaintiff may have some difficulty showing that he had a personal and legally cognizable property interest in 123 Pine Street. As indicated, S & B, not Plaintiff, had owned that property. In addition, the City of Holyoke took the property in tax title in February of 1996 pursuant to Mass. Gen. L. ch. 60, § 54. This taking gave the City title to the property, subject to a right of redemption by S & B in accord with Mass. Gen. L. ch. 60 § 62, during the events presently at issue. *See Town of Agawam v. Connors*, 159 F.2d 360, 361 n. 2 (1st Cir.1947). That right of redemption was never exercised and the City, in January of 2007, obtained a decree under Mass. Gen. L. ch. 60, §§ 65–69, foreclosing S & B's right to redeem.

▆ To be sure, an owner of property holding an unforeclosed right of redemption may still have certain rights vis-a-vis the property. *See, e.g., Hanna v. Town of Framingham*, 60 Mass.App.Ct. 420, 802 N.E.2d 1061, 1066–67 (2004) ("owner of

freehold estate in possession of land" within the meaning of Mass. Gen. L. ch. 240, § 14A can challenge a town's zoning decision even if land is in tax title). Yet even were the court here to assume that S & B and, in turn, Plaintiff had legally cognizable interests in 123 Pine Street during the events at issue, as the Housing Court itself may have assumed, Plaintiff would still be unable to demonstrate that Defendants deprived him of that interest without due process, particularly given Defendants' qualified immunity. As described with respect to Plaintiff's freedom of association claim, Defendants were reasonable, as a matter of law, in relying on the Orders of the Housing Court and restricting Plaintiff's access to 123 Pine Street. Plaintiff's dispute with regard to any of those orders could have been addressed to the Housing Court itself. Accordingly, the court believes that both of Plaintiff's constitutional claims fall short and, therefore, that summary judgment on those claims must enter in Defendants' favor.

### B. *State Claims*

Should the recommendation for summary judgment in Defendants' favor on Plaintiff's constitutional claims be adopted, the court would be free to decline supplemental jurisdiction over Plaintiff's state law claims. *See* 28 U.S.C. § 1367(c). Because these pendent claims clearly raise no genuine issues of material fact, however, this court believes that supplemental jurisdiction should be exercised, if for no other reason than judicial economy.

■■■ As indicated, Plaintiff first alleges that Defendants' actions on August 31 and September 1, 2005, amount to the intentional infliction of emotional distress. To prove intentional infliction of emotional distress, however, Plaintiff must show:

"(1) that the defendant intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe."

*LeBeau v. Town of Spencer,* 167 F.Supp.2d 449, 456 (D.Mass.2001) (quoting *Haddad v. Gonzalez,* 410 Mass. 855, 576 N.E.2d 658, 667 (1991)). Here, even when looked at in a light most favorable to Plaintiff, Gresh's chest bumping of Plaintiff, while perhaps lamentable, does not as a matter of law rise to the level of "extreme and outrageous" conduct. *See id.* at 456–57 ("Conduct is extreme and outrageous if it goes 'beyond all possible bounds of decency and is utterly intolerable in a civilized community.'") (quoting *Agis v. Howard Johnson Co.,* 371 Mass. 140, 355 N.E.2d 315, 319 (1976)). In addition, Plaintiff offers no evidence, besides a soiled pair of pants, that he sustained severe emotional distress or that Defendants acted with the intention of inflicting such distress.

■■■ For his second state cause of action, Plaintiff alleges that Reno and Gresh committed the tortious act of abuse of process, *i.e.,* that "(1) process was used; (2) for an ulterior or illegitimate purpose; (3) resulting in damage." *Sietins v. Joseph,* 238 F.Supp.2d 366, 380 (D.Mass. 2003) (citation and internal quotation marks omitted). In the present case, however, the undisputed facts do not support a finding of an ulterior purpose on the part of the Defendants. *See id.* ("The essence of this tort is the malicious use of legal process 'to accomplish some ulterior purpose for which it was not intended, or which was not the legitimate purpose of the particular process employed.'") (quoting *Carroll v. Gillespie,* 14 Mass.App.Ct. 12, 436 N.E.2d 431, 439 (1982)). In fact, Plaintiff testified that he had no previous personal contact with Gresh and believed Reno was a "kind of a nice guy" prior to

August 31, 2005. Considering this testimony, it makes little sense to assume Defendants acted with an ulterior purpose, even when drawing all reasonable inferences in favor of Plaintiff.

### IV. CONCLUSION

For the reasons described, the court recommends that Defendants' motion for Summary Judgment be ALLOWED.[3]

Sept. 13, 2007.

---

3. Plaintiff is advised that under the provisions of Rule 3(b) of the Rules for United States Magistrate Judges in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within ten (10) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed finds or recommendations to which objection is made and the basis for such objection. Plaintiff is further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Secretary of Health & Human Services,* 848 F.2d 271, 275 (1 st Cir.1988); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega,* 678 F.2d 376, 378–379 (1st Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 604 (1 st Cir.1980). *See also Thomas v. Arn,* 474 U.S. 140, 154–55, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).